Anne H. HAMPTON, Individually, and as Executrix of the Estate of Frederick Jordan Hampton, Deceased

v.

The UNITED STATES.

No. 126–73.

United States Court of Claims.

March 19, 1975.

Sherwin P. Simmons, Tampa, Fla., attorney of record, for plaintiff, Trenam, Simmons, Kemker, Scharf & Barkin, Tampa, Fla., of counsel.

Laurence J. Whalen, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant, Gilbert E. Andrews and Joseph Kovner, Washington, D. C., of counsel.

Before DURFEE, Senior Judge, and KASHIWA and KUNZIG, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DURFEE, Senior Judge.

In her individual capacity and as executrix of the estate of her deceased husband, plaintiff brings this action to recover federal income taxes paid for the calendar years ending December 31, 1963, and December 31, 1964. The issue we are called upon to decide is whether the statute of limitations generally applicable to tax refund claims applies to claims for refund filed pursuant to § 692 of the Internal Revenue Code of 1954. The case is before us on the parties' motions for summary judgment; the pertinent and controlling facts are not in dispute.

Plaintiff is the widow of Colonel Frederick J. Hampton, a career officer in the United States Air Force. From April to October 1953, Colonel Hampton performed active military duty in Korea. Pursuant to Executive Order No. 10195,[1] that Asian country had been designated in 1950 as a "combat zone" for the purposes of certain provisions of the Internal Revenue Code of 1939.[2] Between the Korean conflict and the Vietnam war Colonel Hampton served in various noncombat military assignments. On November 3, 1967, he was assigned to duty with the 311th Air Command Squadron in the Republic of Vietnam, which, since 1964 and pursuant to Executive Order No. 11216,[3] had been classified as a "combat zone" for the purposes of certain provisions of the Internal Revenue Code of 1954 (hereinafter "Code").[4]

On or about March 6, 1968, Colonel Hampton was killed in action.

Plaintiff and Colonel Hampton filed joint federal income tax returns for the years 1963 and 1964, reporting tax liabilities of $2,468.17 and $2,928.00, respectively. Relying upon § 692 of the Code, plaintiff filed claims with the Internal Revenue Service on January 2, 1970, for the refund of these amounts. The determination was made that plaintiff had not filed for the refund within the time

---

1. 3 C.F.R. 1949–1953 Comp., p. 373.

2. *E. g.*, sections 22(b)(13), 154 and 3804(f) of the 1939 Code. 26 U.S.C. §§ 22(b)(13), 154, 3804(f) (1952 ed.).

3. 3 C.F.R. 1964–1965 Comp., p. 301.

4. *E. g.*, sections 112, 692 and 7508 of the 1954 Code.

prescribed by law, and her claims were therefore disallowed. On April 16, 1973, plaintiff submitted her petition to this court. The United States asserts, by way of defense, that the court lacks jurisdiction to entertain plaintiff's action because her claims for refund were not filed within the applicable period of limitations.[5]

Section 692 of the Code—the basis for plaintiff's claimed entitlement—provides as follows:

§ 692. Income taxes on members of Armed Forces on death

In the case of any individual who dies during an induction period (as defined in section 112(c)(5)) while in active service as a member of the Armed Forces of the United States, if such death occurred while serving in a combat zone (as determined under section 112) or as a result of wounds, disease, or injury incurred while so serving—

(1) any tax imposed by this subtitle shall not apply with respect to the taxable year in which falls the date of his death, or with respect to any prior taxable year ending on or after the first day he so served in a combat zone after June 24, 1950; and

(2) any tax under this subtitle and under the corresponding provisions of prior revenue laws for taxable years preceding those specified in paragraph (1) which is unpaid at the date of his death (including interest, additions to the tax, and additional amounts) shall not be assessed, and if assessed the assessment shall be abated, and if collected shall be credited or refunded as an overpayment.

Paragraph (1) provides that a serviceman who dies while serving in a combat zone shall not be subject to income taxes for the year of his death, or for any prior taxable year ending on or after the first day he so served in a combat zone after June 24, 1950. The tax liability with respect to those years is cancelled. If taxes for the years ending on or after the date of first service in a combat zone have been paid, then a claim for refund of those taxes is cognizable under paragraph (1). It is under its ambit that plaintiff seeks repayment of the 1963 and 1964 amounts paid.

■ Paragraph (2) of section 692 authorizes additional tax relief in the case of a serviceman who dies while serving in a combat zone. It applies with respect to years preceding those specified in paragraph (1), that is, with respect to any years prior to first service in a combat zone. Any tax for those years which remains unpaid at the date of the serviceman's death shall not be assessed or collected; if such unpaid taxes are collected, they shall be credited or refunded as an overpayment. It will be observed that the tax forgiveness authorized by paragraph (2) has no bearing in this case because the 1963 and 1964 taxes here in question were not unpaid at the date of Colonel Hampton's death. *See* Wallace v. United States, 127 Ct.Cl. 701, 704, 119 F.Supp. 205, 206 (1954).

The disputed issue here is whether plaintiff's claims under § 692(1) for the refund of Colonel Hampton's 1963 and 1964 taxes were barred by § 6511(a) of the Code, the statute of limitations generally applicable to tax refund claims. Under § 6511(a) a taxpayer must file a claim for refund of an overpayment within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such

---

5. The United States grounds its defense on § 7422(a) of the Code, which provides:

"§ 7422. Civil actions for refund.

"(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

periods is the last to expire.[6] It is plaintiff's contention that § 692(1), by its terms, provides for the recovery of taxes with respect to *all* taxable years from the date of first service in a combat zone after June 24, 1950 through the date of death in the same or another combat zone. In the case of Colonel Hampton, this period embraces all calendar years from 1953 through 1968, though only calendar years 1963 and 1964 are involved in this action. Plaintiff maintains that the application of § 6511(a) limitations to defeat refund claims under § 692 would frustrate clearly expressed congressional intent and would be contrary to the benevolent purposes served by § 692. The specific arguments advanced by plaintiff in support of this reasoning will be discussed, *infra*. According to the Government's theory, Congress did not provide for automatic tax refunds under § 692 for all years prior to combat death starting with 1950. Rather, claims for refunds may be maintained only for those tax years open at the time of death under § 6511(a). The Government contends that the only relief from the § 6511(a) period of limitations in the case of an individual dying in combat is that accorded by § 7508 of the Code, which generally provides servicemen in combat with an extension of time for performing various acts under the revenue laws, including the filing of returns, the payment of taxes, and the filing of a claim for a credit or refund of any tax.

For the reasons hereinafter discussed, we have concluded that plaintiff is not entitled to recover, and accordingly, the petition must be dismissed.

**I.**

In construing these provisions of the income tax Code it is our duty to ascertain and effectuate the intent of Congress. Section 692 does not by its terms provide for a period of limitations different from that prescribed for refund claims generally under § 6511(a), nor are the refund claims authorized under § 692 expressly excepted from the application of § 6511(a) limitations. It is quite true that paragraph (1) of § 692 authorizes relief from federal income taxes for any year on or after the first day a serviceman performed duty in a combat zone after June 24, 1950. But we read these terms of paragraph (1) only as establishing the outer limits of available relief under this special tax forgiveness provision. It is not our view that these terms expressly or impliedly manifest an intent on the part of Congress to dispense with the statute of limitations requiring tax refund claims to be filed within 3 years from the time the return was filed or within 2 years from the time the tax was paid. Absent some clear expression of legislative intent, it is not within our province to except refund claims filed pursuant to § 692 from the application of the general statute of limitations. *Cf.* United States v. Zacks, 375 U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963).

There are clear indications in the legislative history to support the view that claims for refund brought under § 692 must be filed within the period of limitations provided by § 6511(a). The first relief statute similar to § 692 enacted during World War II—§ 421 of the Internal Revenue Code of 1939 [7]—authoriz-

---

**6.** Section 6511(a) provides, in pertinent part, as follows:

"§ 6511. Limitations on credit or refund

"(a) Period of limitation on filing claim.— Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. * *."

**7.** Internal Revenue Code of 1939, 26 U.S.C. (1946 ed.), § 421, 57 Stat. 149. Section 421 provided:

"In the case of any individual who dies on or after December 7, 1941, while in active service as a member of the military or naval forces of the United States or of any of the other United Nations and prior to the termination of the present war as proclaimed by the President, the tax imposed by this chapter shall not apply with respect to the taxable year in which falls the date of his death, and the tax under this chapter and under the corresponding title

ed forgiveness from the income tax which would otherwise apply for the taxable year in which an individual died in active service as a member of the military. It also relieved the estate of such a serviceman from liability for taxes unpaid at the date of death. By the Act of August 5, 1947, 61 Stat. 778, Congress amended the World War II provision to broaden its relief.[8] In the case of an individual who died on or after December 7, 1941, and prior to January 1, 1948, while in the armed services, § 421, as amended, provided for cancellation of tax liability with respect to the taxable year in which falls the date of his death, and with respect to any prior taxable year ending on or after December 7, 1941, during any part of which he was a member of the armed forces. The amended version also retained the provision for forgiveness of income taxes which were unpaid at the date of death.

In order to make this additional relief available to all servicemen who had died on or after December 7, 1941, or who were to die after the amendment and prior to January 1, 1948, Congress passed a special transitional period of limitations as section 2 of the Act of August 5, 1947 (61 Stat. 778). It provided as follows:

> Sec. 2. If at any time prior to January 1, 1948, the allowance of a credit or refund of an overpayment of the tax for any taxable year specified in section 421(a) of the Internal Revenue Code (as amended by this Act) is prevented (except for the provisions of section 3801) by the operation of any

law or rule of law, a credit or refund of the overpayment of such tax to the extent that the overpayment is attributable to the change in law made by this Act may, nevertheless, be allowed or made if a claim therefor is filed before January 1, 1949.

The House Report associated with this amendment clearly indicates that it was Congress' intention to provide relief from the otherwise applicable statute of limitations for filing refund claims. The Report stated as follows:

> Section 2 of the bill extends the time for filing a claim for credit or refund of an income tax paid by a member of the armed forces dying while in service with respect to the taxable year in which falls the date of his death, or with respect to any prior taxable year (ending on or after December 7, 1941) during any part of which he was a member of such forces. If the allowance of credit or refund of such an overpayment is barred prior to January 1, 1948 (*by the statute of limitations,* or any other law or rule of law), section 2 of the bill provides that credit or refund of the overpayment to the extent that the overpayment is attributable to the change in law made by the bill may be allowed or made if claim therefor is filed before January 1, 1949. [Emphasis added.] [H.R.Rep. No.1006, 80th Cong., 1st Sess. 2.] U.S. Code Cong.Serv.1947, p. 1613.

The practical effect of section 2 was to reopen the period of limitations regarding claims for credit or refund of overpayments for taxable years which were

---

of each prior revenue law for preceding taxable years which is unpaid at the date of his death (including interest, additions to the tax, and additional amounts) shall not be assessed, and if assessed the assessment shall be abated, and if collected shall be credited or refunded as an overpayment."

**8.** The amended version of § 421 (26 U.S.C.) (1946 ed., Supp. II), 61 Stat. 778, provided, in pertinent part, as follows:

"In the case of any individual who dies on or after December 7, 1941, while in active service as a member of the military or naval forces of the United States or of any of the other United Nations and prior to January 1, 1948—

"(a) the tax imposed by this chapter shall not apply with respect to the taxable year in which falls the date of his death, or with respect to any prior taxable year (ending on or after December 7, 1941) during any part of which he was a member of such forces; and

"(b) the tax under this chapter and under the corresponding title of each prior revenue law for taxable years preceding those specified in clause (a) which is unpaid at the date of his death (including interest, additions to the tax, and additional amounts) shall not be assessed, and if assessed the assessment shall be abated and if collected shall be credited or refunded as an overpayment."

closed at the time this law was passed on August 5, 1947, and to hold such years open through December 31, 1948.

█ When Congress reenacted this tax forgiveness measure at the beginning of the Korean war,[9] it dropped the special exception from the statute of limitations. There is no reference made to any conflict between the Korean war equivalent of § 692 and the statute of limitations provisions of § 6511(a), nor is there any indication of an intent to cause the period of limitations to be computed differently in the case of a refund of an overpayment under this section than in the case of refund claims generally. We are compelled to conclude in light of this legislative background that, absent an express measure excepting tax refund claims under § 692 from the operation of the general statute of limitations, the limitations period therein prescribed was intended to apply. *Cf.* United States v. Zacks, *supra,* at 64–67, 84 S.Ct. 178.

There is additional evidence in the legislative record of this statute which demonstrates that Congress considered claims under § 692 to be subject to the general statute of limitations. Section 692 was recently amended by Public Law No. 93–597, § 4 (January 2, 1975) with respect to years ending on or after the commencement of hostilities in Vietnam, February 28, 1961, to provide that relief under that section would not be lost due to a determination that a serviceman had died several years earlier but had mistakenly been classified as missing in action. Section 4(c) of the Act provided for a special exception to the operation of the statute of limitations, as follows:

(c) *Refunds and Credits Resulting from Section 692 of Code.*—If the refund or credit of any overpayment for any taxable year ending on or after February 28, 1961, resulting from the application of section 692 of the Internal Revenue Code of 1954 (as amended by subsection (a) of this section) is prevented at any time before the expiration of one year after the date of the enactment of this Act by the operation of any law or rule of law, but would not have been so prevented if claim for refund or credit therefor were made on the due date for the return for the taxable year of his death (or any later year), refund or credit of such overpayment may, nevertheless, be made or allowed if claim therefor is filed before the expiration of such one-year period.

It is obvious that such a provision would be unnecessary if Congress did not recognize the usual period of limitations to apply to refund claims under § 692.

## II

█ Several arguments are pressed by plaintiff in support of her contention that the § 6511(a) period of limitations is not applicable in any respect to claims for recovery arising under § 692(1). Plaintiff first of all postulates that the terms of § 6511(a) and of § 692(1) are inconsistent and in conflict with each other. Reliance is placed upon the established canon of statutory construction that where general provisions, terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the par-

---

**9.** It was the Korean war measure which first conditioned relief to service in a "combat zone." Section 154 of the 1939 Code (26 U.S.C.) (1952 ed.), 65 Stat. 452, provided:

"In the case of any individual who dies after June 24, 1950, and prior to January 1, 1955, while in active service as a member of the Armed Forces of the United States, if such death occurred while serving in a combat zone (as determined under section 22(b)(13)) or as a result of wounds, disease, or injury incurred while so serving—

"(a) the tax imposed by this chapter shall not apply with respect to the taxable year in

which falls the date of his death, or with respect to any prior taxable year ending on or after the first day he so served in a combat zone after June 24, 1950; and

"(b) the tax under this chapter and under the corresponding title of each prior revenue law for taxable years preceding those specified in clause (a) which is unpaid at the date of his death (including interest, additions to the tax, and additional amounts) shall not be assessed, and if assessed the assessment shall be abated, and if collected shall be credited or refunded as an overpayment."

ticular provisions must control. It is plaintiff's argument · that the broader, more general language of the statute of limitations must yield to the specific terms of § 692(1) providing for refund of taxes for years as early as 1950. In the first place, there is no conflict or inconsistency inherent in the terms of these two sections of the Code: the time period embodied in § 692(1) merely defines the extent or scope of claims authorized under that section, whereas the statute of limitations, by its nature, limits the time period for the *enforcement* of such a claim. Additionally, while we do not gainsay the importance of rules of statutory construction, the limited scope of such "rules" must be kept in mind. They are useful only insofar as they give guidance to courts in discovering the legislature's intent. But where the legislative intent is otherwise manifest, resort to general maxims or principles of statutory construction is of dubious value. Here, as discussed *supra,* the legislative record makes clear that Congress did not intend to exclude refund claims under § 692 from the operation of the general statute of limitations. The rule of construction urged by plaintiff—adherence to which would produce a result plainly at variance with the expressed legislative intent—must be rejected.

Plaintiff next directs our attention to the fact that § 692 is physically arranged in two separate paragraphs, each of which provides a different and distinct form of tax relief. At the end of paragraph (2), which authorizes forgiveness of any tax unpaid at the time of a serviceman's death, it is provided that any such unpaid taxes which are subsequently paid shall be credited or "refunded as an overpayment." It is conceded by plaintiff that this language, *as to claims for relief under paragraph (2),* invokes the general statute of limitations in § 6511(a), which governs limitations for

claims "for credit or refund of an overpayment." However, plaintiff objects to the Government's reliance on this language of paragraph (2) to invoke the general statute of limitations against claims for refund arising under paragraph (1). It is plaintiff's contention that these terms of paragraph (2) in no way operate to circumscribe the remedies available to enforce the "absolute right" (plaintiff's words) to recover taxes under paragraph (1).

██ It appears that plaintiff is correct in the assertion that the "refund of an overpayment" language of paragraph (2) applies only with respect to claims for relief under that paragraph, and not with respect to claims arising under paragraph (1).[10] It is also true, as the plaintiff points out, that paragraph (1) has no language similar to that in paragraph (2) providing that taxes which have been paid shall be "refunded as an overpayment." But in our view there is a logical reason for the omission. As will appear from an analysis of the total legislative plan providing relief from the revenue laws for servicemen in combat, to be discussed *infra,* it is generally assumed that taxes for the years for which paragraph (1) provides forgiveness would not be paid in the first place and, accordingly, that refunds for those taxes would not be required. In any event, when taxes for years covered by paragraph (1) *are in fact paid,* it is clear from the legislative history of § 692 that Congress intended the taxpayer's estate to recover those taxes by filing a claim for the "refund of an overpayment." The special transitional period of limitations established by the 1947 amendment to the World War II version of § 692 provided for "the allowance of a credit or *refund of an overpayment of the tax for any taxable year specified in section 421(a)* [the equivalent of paragraph (1) of

---

**10.** This conclusion is supported by the language and structure of § 692. *See* Wallace v. United States, 127 Ct.Cl. 701, 704, 119 F.Supp. 205, 206 (1954), wherein the court stated: "The language at the end of * * * paragraph [2] about crediting or refunding taxes

unpaid at the date of death must have to do with cases where information as to the death of the soldier was delayed, or where, in ignorance of the law, the taxes were paid after his death."

§ 692]." [Emphasis added.] We are compelled to reject plaintiff's contention that claims for the refund of taxes paid for years covered by paragraph (1) of § 692 are not required to be filed as claims for the "refund of an overpayment." [11]

▮▮▮ Plaintiff's argument that refunds under § 692(1) are governed by the 6-year period of limitations prescribed in 28 U.S.C. § 2401, the general statute of limitations for civil actions against the United States, is based upon the incorrect assumption that the filing of a claim for the "refund of an overpayment" is not required under § 692(1). Moreover, the filing of a claim for refund or credit with the Secretary of the Treasury is a condition precedent to the maintenance of any suit for the recovery of any wrongfully assessed tax, penalty or "of *any sum* alleged to have been excessive or *in any manner* wrongfully collected." [Emphasis added.] Int.Rev. Code of 1954, § 7422(a).[12] We have no doubt that the all inclusive "any sum" and "in any manner" language embraces taxes sought to be recovered under § 692(1). Plaintiff's argument for avoidance of the requirement of filing a refund claim with the Secretary—thereby to avoid the shorter period of limitations imposed on the filing of refund claims by § 6511(a)—disregards the legislative plan for seeking the recovery of income taxes as well as its underlying policy considerations. *See* J. O. Johnson, Inc. v. United States, 201 Ct.Cl. 315, 321–23, 476 F.2d 1337, 1340–41, cert. denied, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973). No authority is cited by plaintiff for the proposition that Congress intended § 692(1) to constitute statutory authority for suits against the United States outside the scope of that provided in the Internal Revenue Code. We have no warrant to deviate from the general Code pattern providing for the recovery of taxes without some clear reason or indication of legislative intent that re-

fund claims under § 692(1) should be accorded the special treatment demanded by plaintiff. The only case cited by plaintiff in support of her theory that refunds under § 692(1) are governed by the general 6-year statute of limitations is Hoon Kwan Young v. United States, 110 F.Supp. 237 (D.Hawaii 1953). That decision is not in point since it was expressly grounded on the doctrine of account stated, a doctrine which sounds in contract and thereby allows recovery under the general 6-year statute of limitations. *See* Bonwit Teller & Co. v. United States, 283 U.S. 258, 265, 51 S.Ct. 395, 75 L.Ed. 1018 (1931).

▮▮▮ Plaintiff next asserts that § 6511(a) cannot control here because that section is applicable only to taxes in respect of which the taxpayer is required to file a return, and that Colonel Hampton was not required to file a return for the 1963 and 1964 taxes since § 692(1) cancels his liability for those taxes. The first problem with this argument is its narrow and strict interpretation as to the scope of § 6511(a). In Alexander Proudfoot Co. v. United States, 197 Ct.Cl. 219, 454 F.2d 1379 (1972), and again in J. O. Johnson, Inc. v. United States, *supra*, this court refused to accept a restricted interpretation of § 6511(a) which would limit its application to taxes for which a return is required. Those cases concerned the taxpayers' claims for the recovery of sums paid in satisfaction of an accumulated earnings tax. It was argued that since an accumulated earnings tax is not the type of tax which is reported on a return—because it is not self-assessing in nature—the period of limitation was inapplicable. In rejecting this argument the court in *Alexander Proudfoot* stated:

> * * * § 6511(a) was obviously intended to cover all taxes, whether or not a return is required, and its wording can easily carry that understanding since it expressly provides for the case where "no return was filed by

---

11. The Treasury Regulations also provide that if taxes for years covered by § 692(1) are collected the amount so collected "shall be credited or refunded as an overpayment." Treas.

Reg. § 1.692–1(a)(1). And *see* Rev.Rul. 69–301, 1969–1 Cum.Bull. 183.

12. *See* note 5, *supra*.

the taxpayer." [197 Ct.Cl. at 225, n. 7, 454 F.2d at 1382, n. 7; *accord, J. O. Johnson, Inc., supra,* 201 Ct.Cl. at 320, 476 F.2d at 1340.]

This conclusion was shown to be supported by congressional intent, as manifested in the general legislative scheme of § 6511(a) and related sections of the tax code. *See J. O. Johnson, supra,* 201 Ct.Cl. at 320–23, 476 F.2d at 1340–41.

 In any event, plaintiff is incorrect in her assertion that Colonel Hampton was not required to file income tax returns for the years 1963 and 1964. The terms of § 692, which cancel liability for the "tax imposed," do not relieve taxpayers of the obligation of filing tax returns otherwise required under § 6012 of the Code (26 U.S.C.). Not only was Colonel Hampton required to file tax returns for the years 1963 and 1964, but returns for those years were, in fact, timely filed.

### III

 Having decided that claims for a tax refund pursuant to § 692(1) are not invulnerable to the defense of limitations, we turn to the question whether the statute of limitations operates to bar the refund claims involved in the instant case. The pertinent terms of § 6511(a) require that a claim for refund of taxes be filed within 3 years from the filing of the tax return. As mentioned earlier, Colonel Hampton's tax returns for 1963 and 1964 were filed on April 15, 1964 and April 15, 1965, respectively. As to the recovery of the 1963 taxes, the period of limitations expired on April 15, 1967. Thus, the period of limitations elapsed prior to Colonel Hampton's assignment to Vietnam, and prior to his combat death. According to the Government's theory, the operation of the statute of limitations closed the door so that the recovery of the 1963 taxes was never possible. As to the recovery of the 1964 taxes, the 3-year period of limitations would normally have expired on April 15, 1968. However, Colonel Hampton was assigned to active duty in Vietnam on November 3, 1967, and the Govern-

ment maintains that the running of the statute of limitations was suspended during his service in that combat zone by virtue of § 7508 of the Code (26 U.S.C.). That section postpones the time for performing certain acts under the revenue laws—including the time for filing a claim for credit or refund of any tax—during the period of service in a combat zone, plus the period of continuous hospitalization outside the United States attributable to injury in a combat zone, plus the next 180 days thereafter. The Government asserts that when an individual dies in combat § 7508 was intended by Congress to apply and to provide his estate with relief from the statute of limitations. This view is supported by the House Report associated with the enactment of § 3804(f) of the 1939 Code, the statutory predecessor of § 7508. The House Report states:

* * * In the case of an individual who dies while serving in a combat zone, or while hospitalized outside the States of the Union and the District of Columbia as a result of injury received in a combat zone, the next 180 days after his death would be disregarded under section 3804 in determining whether acts have been timely performed by his executor, administrator, or conservator. [H.R.Rep.No.3200, 81st Cong., 2d Sess. 2.] U.S.Code Cong.Serv.1950, p. 4260.

 The Government points out that the period of limitations for filing a claim with respect to the 1964 taxes had approximately 5½ months to run at the time of Colonel Hampton's assignment to Vietnam. Thus, under the Government's analysis, the period of limitations was suspended by § 7508 during the period of the taxpayer's service in Vietnam (November 3, 1967 to March 6, 1968), plus 180 days thereafter (March 7, 1968 to September 2, 1968) and it expired 5½ months later, on or about February 15, 1969. The Government says that plaintiff's claim for refund of the 1964 taxes would have been timely if it had been filed on or before February 15, 1969.

Plaintiff forcefully urges that the Government's analysis of the relationship

between § 6511(a) and § 692(1) produces a result which is harsh, unreasonable and patently absurd. The crux of plaintiff's argument is that § 6511(a) assumes that a claim for a tax refund arises upon the due date for filing the return (or alternatively, upon the date of actual payment), and that when its terms are applied to limit the period for the enforcement of a claim under § 692(1), which contemplates the date of the serviceman's death as the event giving rise to the claim for a tax refund, then an unintended injustice manifestly results. Plaintiff points out that the operation of these sections results in the expiration of the period of limitations—at least with respect to the refund claim for the 1963 taxes—prior to the time the claim under § 692(1) arises. Numerous authorities are relied upon for the proposition that a period limited by law for the enforcement of a claim cannot begin to run until such time as the claim or cause of action to which it relates arises. Plaintiff also invokes the principle that statutes must be construed to avoid absurd and whimsical results. It is submitted that refund claims for 1963 and 1964, having been filed within 3 years from the date of Colonel Hampton's death, were timely filed and not barred by the operation of § 6511(a).

The Government is technically correct in its conclusion that plaintiff's refund claims under § 692(1) are barred by the operation of § 6511(a) limitations. We do not hesitate to so hold. We would be inclined to agree with plaintiff's argument that the joint construction of § 692(1) and the statute of limitations produces an anomalous result if, in fact, plaintiff were correct in her contention that the death of Colonel Hampton gave rise to a claim for the refund of his 1963 and 1964 taxes. The principal flaw in plaintiff's reasoning is that it begs the ultimate question by assuming that the recovery of Colonel Hampton's 1963 and 1964 taxes is warranted under the provisions of § 692(1). We have concluded that the terms of § 692(1) do not authorize the refund of taxes for those years. When the relief accorded by § 692(1) is

confined to its intended and limited scope, the interrelationship between that section of the Code and the statute of limitation produces no harsh, unjust or absurd results.

Section 692(1) expressly provides that any tax shall not apply with respect to the taxable year of a serviceman's death, " * * * or with respect to any prior taxable year ending on or after the first day he so served in a combat zone after June 24, 1950 * * *." The extent of the relief provided is circumscribed by two events: one is the date of first service in a combat zone after June 24, 1950; the other is combat death. Drawing from the literal import of the language plaintiff maintains that tax liability is cancelled for all years between these two events, whether or not their occurrence is in the same combat zone, and whether or not there are intervening years of noncombat service. This interpretation would allow recovery of the taxes for 1963 and 1964, 2 years of noncombat service in the span of time between Colonel Hampton's tour of combat duty in Korea and his tour of combat duty in Vietnam.

■■■ We interpret the statute differently. It is our view that Congress intended paragraph (1) of § 692 to cancel tax liability for *years of actual, continuous combat service* from the time a serviceman first entered the combat zone until his subsequent death therein. Since paragraph (1) relates solely to years in combat service, then paragraph (2)—which refers to " * * * taxable years preceding those specified in paragraph (1) * * *"—must accordingly relate to all years prior to the date in which a serviceman entered combat.

Section 692(1) and (2) should be construed together with the other related provisions of the Code which afford special tax treatment to members of the Armed Forces serving in combat. A brief description of the statutory framework will facilitate our analysis of the intended scope of relief under § 692(1), and it will demonstrate that the interpretation we have given to that section

is in harmony with the legislative scheme. Under § 112 of the Code an exclusion from gross income is provided for pay received for active service by a member of the armed forces for any month during which he either served in a combat zone or was hospitalized as a result of wounds, disease, or injury incurred while serving in a combat zone. This is referred to as "combat pay." (In the case of enlisted personnel the exclusion applies to all of their pay; in the case of commissioned officers, the exclusion applies to the first $500 per month of their pay.) Additionally, under § 3401(a)(1) of the Code, such combat pay is not subject to withholding.

A Serviceman in combat is also given an automatic extension of time to perform certain acts under the revenue laws by virtue of § 7508 of the Code. He may disregard the period of service in a combat zone plus any period of hospitalization abroad as a result of injuries incurred in such service, plus the next 180 days. The postponement authorized under § 7508 generally applies to the filing of returns, the payment of any tax, the assessment of any tax, and the commencement of any suit. As mentioned earlier, these deferment rules expressly authorize relief from the period of limitations for filing a claim for credit or refund of any tax. 26 U.S.C. § 7508(a)(1)(E). Moreover, in the case of an individual who dies while serving in a combat zone, or while hospitalized abroad as a result of injury received in a combat zone, the next 180 days after his death would be disregarded under § 7508 in determining whether acts have been timely performed by his executor, administrator or conservator.

The total legislative scheme of § 692 and these other related provisions is geared to accommodate the exigencies of war. The terms of paragraph (1) of § 692 clearly appear to contemplate that a serviceman's pay has not been included in gross income, that his combat pay was not subject to withholding, that the serviceman did not file any tax return, and that he did not in fact pay any taxes.

Thus, the language of paragraph (1)— that "any tax imposed by this subtitle *shall not apply* * * * " [emphasis added]—was not inadvertently chosen; it was obviously intended to be applicable with respect to years for which there was no obligation to file any returns or pay any tax. Since the tax "shall·not apply" the estate of the deceased serviceman is thus relieved under paragraph (1) of the obligation of paying taxes for the years of combat service. By comparison, the language of paragraph (2) of § 692 provides that *"any tax * * * which is unpaid at the date of his death (including interest, additions to the tax, and additional amounts) shall not be assessed * * *."* [Emphasis added.] These terms assume that the serviceman has an outstanding tax liability which remains unpaid at the date of his death. Since there is no outstanding tax liability for the years of continuous service in a combat zone from the date of first entry until subsequent death therein, paragraph (2) must refer solely to years prior to such combat service. The tax forgiveness of paragraph (2) frees the estate and family of the dead serviceman of the burden of raising funds to satisfy the serviceman's unpaid tax debts.

There are no "refund" provisions included in paragraph (1) (as there are in paragraph (2) ), and this is further evidence that paragraph (1) applies strictly to years in combat service. The reason for the omission is, once again, that it was generally assumed that a serviceman in combat would not file returns and pay any tax during combat service; rather, it was assumed that he would take advantage of the deferment rules of § 7508. It is clear, nevertheless, that if a serviceman was overly diligent and paid his taxes during years in combat, his estate could recover those taxes pursuant to paragraph (1) by filing a claim for the refund of an overpayment (*see* discussion, *supra* ).

There is no harshness or absurdity resulting from the joint operation of § 692 (as we have construed its provisions) and the § 6511(a) statute of

limitations. Under § 6511(a) the filing of a return (or the payment of a tax) normally commences the running of the period of limitations for refund claims. However, § 7508(a)(1)(E) defers the running of limitations as to refund claims during the period that a serviceman is in combat service, and for the next 180 days. Accordingly, 180 days after combat death the statute of limitations commences to run and the deceased serviceman's estate has 3 years from that time to file a claim for the refund of taxes paid during years of combat service.

There is nothing in the legislative history of § 692(1) to suggest that Congress intended it to provide tax relief for years of noncombat service which intervene two tours of combat duty in different combat zones. On the contrary, such indications as there are show that relief was to be limited to years of actual combat service from the date of first entry into a combat zone until subsequent death therein. The World War II measure for the abatement of income taxes upon the death of a member of the armed services, § 421 of the 1939 Code,[13] applied in the case of an individual who died on or after December 7, 1941 and " * * * before the termination of the present war * * *." When that provision was amended by the Act of August 5, 1947 (61 Stat. 778) to broaden its relief,[14] the new provision applied in the case of an individual who died " * * * on or after December 7, 1941 * * * and prior to January 1, 1948 * * *." The carefully circumscribed terms of both versions of § 421 of the 1939 Code make clear that they were meant to apply in the case of deaths occurring during service in World War II. Between 1948 and 1950 this country was not engaged in any war and, accordingly, there was no tax relief measures similar to § 692 then in force. The Korean war

version, § 154 of the 1939 Code,[15] applied in the case of an individual who died in combat " * * * after June 24, 1950, and prior to January 1, 1955 * * *." United States and United Nations forces were still engaged in the Korean conflict on January 1, 1954, and, accordingly, by the Technical Changes Act of 1953 (67 Stat. 615) Congress extended the terms of the tax relief measure for another year by striking out "January 1, 1954" and inserting "January 1, 1955." The terms of ·§ 154 were clearly drawn to apply only with respect to years of combat service in the Korean war.

When § 692 came into being at the time of the enactment of the Internal Revenue Code of 1954, the Korean conflict had not yet come to an end.[16] The terms of § 692 were written to apply to combat deaths after June 24, 1950. No expiration date was included within the terms of § 692, evidently either because there was uncertainty as to when hostilities in Korea would terminate, and Congress wanted to avoid technical amendments extending the terms of § 692 in the future, or, as is more likely the case, it was felt that the inclusion of a specific expiration date in the statute was somewhat superfluous since the terms of § 692 became operative and inoperative by Executive Order. There was no need to enact special legislation or to amend § 692 to provide relief to the estates of servicemen killed in Vietnam; the terms of the statute became operative upon the President's designation of Vietnam as a "combat zone."[17]

As previously mentioned, the recent amendment of § 692 by Public Law 93–597 holds open the period of limitations so that relief under that section would not be lost due to a determination that a serviceman had died at an earlier time but had been mistakenly classified as missing in action. Prior to the amend-

---

13. See note 7, *supra.*

14. See note 8, *supra.*

15. See note 9, *supra.*

16. It was not until January 31, 1955, that Korea lost its "combat zone" status for the pur-

poses of the relevant sections of the Internal Revenue Code. Exec.Order No. 10585, 3 C.F.R., 1954–1958 Comp., p. 235.

17. The date designated for the commencement of combatant activities in Vietnam was January 1, 1964. Exec.Order No. 11216, 3 C.F.R., 1964–1965 Comp., p. 301.

ment taxes were forgiven only through the year of the serviceman's *actual* death; the amendment extends the forgiveness to cover the years a serviceman is in missing status following his actual death. It is important to note that the limitations period is held open as to refund claims " * * * for any taxable year ending on or after February 28, 1961 * * *." Thus, the estates of those missing in action in Vietnam (and later determined to have died at an earlier time) can only claim refunds under § 692 for years subsequent to the commencement of hostilities in Vietnam. This is persuasive support for the view that Congress did not intend the estates of those dying in Vietnam to recover income taxes, pursuant to § 692(1), for taxable years prior to years of service in that combat zone.

 In summary, Congress enacted § 692 to alleviate some of the hardships borne by survivors of servicemen dying as a result of service in a combat zone. Under paragraph (1) of that provision tax liability is cancelled for years of actual, continuous combat service from the time a serviceman first entered the combat zone until his subsequent death therein. Under paragraph (2) any taxes for prior years which remain unpaid at the serviceman's death are forgiven. We are unable to construe § 692 as liberally as plaintiff would like. To allow plaintiff to recover taxes for years of noncombat service (1963 and 1964), prior to Colonel Hampton's combat zone assignment to Vietnam in 1967, would provide plaintiff with a windfall and would stretch the relief afforded by § 692 beyond its intended bounds.

For the reasons stated above, we hold that plaintiff's tax refund claims were technically barred by the statute of limitations. But even if plaintiff were able to cross the barrier of limitations, her claim for the refund of Colonel Hampton's 1963 and 1964 income taxes would have to be disallowed on the merits. Accordingly, the plaintiff's motion for summary judgment is denied and the defendant's cross-motion for summary judgment is granted. The petition is dismissed.