**HARRIS TRUST AND SAVINGS BANK, CHICAGO, ILLINOIS, Executor and Trustee Under the Will of Orville V. Woolley,**

v.

**The UNITED STATES.**

**No. 408–79T.**

United States Court of Claims.

March 25, 1981.

William J. Lehrfeld, Washington, D. C., attorney of record, for plaintiff; William J. Lehrfeld, P. C., Washington, D. C., of counsel.

Daniel Lavin, Washington, D. C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Theodore D. Peyser, Jr. and Donald H. Olson, Washington, D. C., of counsel.

Before COWEN, Senior Judge, and KASHIWA and BENNETT, Judges.

KASHIWA, Judge:

This case is before us on defendant's motion to dismiss count II of plaintiff's [1] petition. The sole question for our determina-

---

1. Plaintiff, Harris Trust and Savings Bank, is the executor and trustee under the will of the decedent, Orville V. Woolley.

tion is whether plaintiff is allowed an estate tax deduction for the present value of an income interest in property passing to a charity under a reformed trust. Our decision encompasses 10 years of legislation essentially beginning with the Tax Reform Act of 1969 through the Technical Corrections Act of 1979. After considering the briefs of the parties and oral argument, for the reasons discussed below, we grant defendant's motion to dismiss and thereby dismiss count II of the petition.

## I. *The Facts*

The decedent, Orville V. Woolley, died on November 3, 1973. A federal estate tax return, Form 706, was filed and an estate tax of $138,819.93 was paid on August 2, 1974.[2]

At the time of Mr. Woolley's death, the charitable remainder trust[3] created in his will, and amended by the first and second codicils, did not qualify for a charitable deduction because of its failure to conform to the requirements of I.R.C. § 2055(e)(2).[4] This trust was then the subject of a reformation proceeding in the Circuit Court of Cook County, Illinois, Chancery Division; the petition for reformation was filed on December 28, 1977. By judgment rendered on February 10, 1978, the Illinois court granted the petition for reformation of the trust.[5] The Internal Revenue Service thereafter determined by Technical Advice Memorandum (issued June 20, 1979) that the reformed trust conformed to the requirements of I.R.C. § 2055(e)(2)(A) and (B). Thus, after reformation, the trust provided both a qualified remainder interest and a qualified income interest passing to a charity.

Plaintiff filed separate claims for refund of the two interests. Count I, dealing with the charitable remainder interest was filed on June 20, 1978; count II, the charitable income interest, was filed on June 28, 1978. Defendant concedes that, by virtue of the extension to the statute of limitations provided by section 1304(b) of the Tax Reform Act of 1976, count I of the petition is timely and a refund is allowed. Therefore, the issue of the charitable remainder interest is not before us.

## II. *Statutory Background*

Prior to the Tax Reform Act of 1969, there were no substantial restrictions on estate tax deductions for income and remainder interests passing to charities. In 1969, however, I.R.C. § 2055(e) was amended to create the restrictions now found in I.R.C. § 2055(e)(2).[6] Section 201(d)(1), Tax Reform Act of 1969, Pub.L.No.91–172, 83 Stat. 560.

---

**2.** A deficiency of $361.74 was subsequently paid on November 3, 1975.

**3.** As a general rule, a charitable remainder trust provides for a specified distribution at least annually for life or a term of years to one or more beneficiaries, at least one of which is not a charity, with an irrevocable remainder interest to be held for the benefit of, or paid over to, charity. Generally, the amount received each year by the income beneficiary will be either a stated dollar amount or a fixed percentage of the value of the trust property. See note 4, *infra. See generally* Rev.Rul. 72–395, 1972–2 C.B. 340, *modified,* Rev.Rul. 80–123, 1980–1 C.B. 205.

**4.** I.R.C. § 2055(e)(2) specifically requires a trust to conform to the requirements of I.R.C. § 664(d)(1) (charitable remainder annuity trust), I.R.C. § 664(d)(2) (charitable remainder unitrust), or I.R.C. § 642(c)(5) (pooled income fund).

**5.** This reformation proceeding was authorized by section 51(2), Chapter 148, Illinois Revised Statutes. This statute permits a will or trust to take advantage of the reformation of such governing instruments allowed by I.R.C. § 2055(e)(3), thereby making available to an estate the favorable federal estate tax treatment accorded qualified charitable remainder trusts. *See also* 57 A.L.R.3d 1044 (1974); *see generally* Rev.Rul. 76–17, 1976–1 C.B. 279.

**6.** "SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.

\* \* \* \* \* \*

"(e) *Disallowance of Deductions in Certain Cases.—*

\* \* \* \* \* \*

"(2) Where an interest in property (other than a remainder interest in a personal residence or farm or an undivided portion of the decedent's entire interest in property) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or

In 1974, Congress added I.R.C. § 2055(e)(3), Pub.L.No.93–483, 88 Stat. 1457.[7] I.R.C. § 2055(e)(3) allowed a post-death reformation of a trust or will to qualify the interest provided therein under I.R.C. § 2055(e)(2). Charitable income interests were not specifically referred to.

In 1976, section 1304 of the Tax Reform Act of 1976 (the 1976 Act), Pub.L.No.94–

455, 90 Stat. 1715 (uncodified),[8] extended the date to begin proceedings to reform wills and trusts from December 31, 1975, to December 31, 1977. Also, section 1304(b) extended the statute of limitations[9] for filing claims for refund until June 30, 1978. No substantive changes in I.R.C. § 2055(e)(3) were made.

In 1978, section 514(a) of the Revenue Act of 1978 (the 1978 Act), Pub.L.No.95–

---

money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless—

"(A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), or

"(B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly)."

7. As enacted in 1974, I.R.C. § 2055(e)(3) provides:

"(3) In the case of a will executed before September 21, 1974, or a trust created before such date, if a deduction is not allowable at the time of the decedent's death because of the failure of an interest in property which passes from the decedent to a person, or for a use, described in subsection (a), to meet the requirements of subparagraph (A) of paragraph (2) of this subsection, and if the governing instrument is amended or conformed on or before December 31, 1975, or, if later, on or before the 30th day after the date on which judicial proceedings begun on or before December 31, 1975 (which are required to amend or conform the governing instrument), become final, so that the interest is in a trust which is a charitable remainder annuity trust, a charitable remainder unitrust (described in section 664), or a pooled income fund (described in section 642(c)(5)), a deduction shall nevertheless be allowed. The Secretary or his delegate may, by regulation, provide for the application of the provisions of this paragraph to trusts whose governing instruments are amended or conformed in accordance with this paragraph, and such regulations may provide for any adjustments in the application of the provisions of section 508 (relating to special rules with respect to section 501(c)(3) organizations), subchapter J (relating to estates, trusts, beneficiaries, and decedents), and chapter 42 (relating to private foundations), to such trusts made necessary by the

application of this paragraph. If, by the due date for the filing of an estate tax return (including any extension thereof), the interest is in a charitable trust which, upon allowance of a deduction, would be described in section 4947(a)(1), or the interest passes directly to a person or for a use described in subsection (a), a deduction shall be allowed as if the governing instrument was amended or conformed under this paragraph. If the amendment or conformation of the governing instrument is made after the due date for the filing of the estate tax return (including any extension thereof), the deduction shall be allowed upon the filing of a timely claim for credit or refund (as provided for in section 6511) of an overpayment resulting from the application of this paragraph. In the case of a credit or refund as a result of an amendment or conformation made pursuant to this paragraph, no interest shall be allowed for the period prior to the expiration of the 180th day after the date on which the claim for credit or refund is filed."

8. Section 1304(a) and (b) of the 1976 Act provides:

"(a) *Extension of Time.*—Section 2055(e)(3) (relating to the allowance of deductions in certain cases) is amended—

"(1) by striking out 'September 21, 1974,' and inserting in lieu thereof 'December 31, 1977,' and

"(2) by striking out 'December 31, 1975' each place it appears and inserting in lieu thereof 'December 31, 1977'.

"(b) *Extension of Period for Filing Claim for Refund of Estate Tax Paid.*—A claim for refund or credit of an overpayment of the tax imposed by section 2001 of the Internal Revenue Code of 1954 allowable under section 2055(e)(3) of such Code (as amended by subsection (a)) shall not be denied because of the expiration of the time for filing such a claim under section 6511(a) if such claim is filed not later than June 30, 1978."

9. I.R.C. § 6511(a) provides that the taxpayer is required to file a refund claim within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever expires later.

600, 92 Stat. 2883, amended I.R.C. § 2055(e)(3) to specifically refer to income interests passing to charities (*i. e.*, I.R.C. § 2055(e)(2)(B)).[10] Section 514(a) of the Revenue Act of 1978 was made retroactive to decedents dying after December 31, 1969, by section 105(a)(4)(B) of the Technical Corrections Act of 1979 (the 1979 Act), Pub.L. No.96–222, 94 Stat. 218.

## III. *The Merits*

A. Since the enactment of I.R.C. § 2055(e)(3) in 1974 the following language has been present:

> If the amendment or conformation of the governing instrument is made after the due date for the filing of the estate tax return (including any extension thereof), the deduction shall be allowed *upon the filing of a timely claim for credit or refund (as provided for in section 6511)* of an overpayment resulting from the application of this paragraph. [Emphasis supplied.]

Plaintiff's refund claim was not filed within the time frame provided in I.R.C. § 6511(a). Nevertheless, plaintiff asserts that its claim for refund for the charitable income interest is timely because of the extension provided by section 1304(b) of the 1976 Act. *See* note 8, *supra.* Further, plaintiff admits that if section 1304(b) of the 1976 Act does not operate to extend the statute of limitations for filing refund claims for charitable income interests, I.R.C. § 6511 requires that count II be dismissed.

B. Plaintiff puts forward two arguments. The first of these is that I.R.C. § 2055(e)(3), prior to the explicit provision in the 1978 version of that section, allowed deductions for reformed charitable remain-

der *trusts* (encompassing both the charitable remainder and income interests), thereby making count II timely under section 1304(b) of the 1976 Act. Plaintiff views the pre-1978 legislation as omitting relief only for charitable lead trusts.[11]

The relevant language of I.R.C. § 2055(e)(3), as amended by section 1304(a) of the 1976 Act, is as follows:

> In the case of a will executed before December 31, 1977, or a trust created before such date, if a *deduction* is not allowable at the time of decedent's death *because of the failure of an interest in property* which passes from the decedent to a person, or for a use, described in subsection (a) *to meet the requirements of (A) of paragraph (2) of this subsection* [*i. e.*, I.R.C. § 2055(e)(2)(A)], and if the governing instrument is amended or conformed on or before December 31, 1977, * * * so that the *interest* is in a trust which is a charitable remainder annuity trust, a charitable remainder unitrust (described in section 664), or a pooled income fund (described in section 642(c)(5)), a *deduction* shall nevertheless be allowed. [Emphasis supplied.]

Both I.R.C. § 2055(e)(2) and (3) deal exclusively with types of *interests.* I.R.C. § 2055(e)(3) allows a deduction of a charitable remainder interest after the reformation of the governing instrument. In drafting the relevant language the word "deduction" is used twice. It is beyond doubt that "deduction" is used the first time in reference to an unqualified remainder interest because "deduction" is used in the context of "a deduction * * * not allowable * * * because of the failure of an interest in

10. The 1978 version of I.R.C. § 2055(e)(3) provides in relevant part:

> "(3) In the case of a will executed before December 31, 1977, or a trust created before such date, if a deduction is not allowable at the time of the decedent's death because of the failure of an interest in property which passes from the decedent to a person, or for a use, described in subsection (a) to meet the requirements of subparagraph (A) *or (B)* of paragraph (2) of this subsection, and if the governing instrument is amended or conformed on or before December 31, 1978, or, if later, on or be-

fore the 30th day after the date on which judicial proceedings begun on or before December 31, 1978 (which are required to amend or conform the governing instrument), become final, so that the interest is in a trust which meets the requirements of such subparagraph (A) or (B) (as the case may be), a deduction shall nevertheless be allowed. * * *" [Emphasis supplied.]

11. Generally, plaintiff uses this term to mean a trust with only a charitable income interest and a private remainder.

property * * * to meet the requirements of [I.R.C. § 2055(e)(2)(A)]." The only type of interest referred to in I.R.C. § 2055(e)(2)(A) is a remainder interest. The word "deduction" is used for the second time in the form of a conditional allowance of a deduction of an interest if the governing instrument is reformed on or before December 31, 1977, in conformance with the trusts enumerated in I.R.C. § 2055(e)(2)(A).

Under plaintiff's interpretation, however, the second use of the word "deduction" encompasses both remainder and income interests. Thus, were we to adopt plaintiff's position, the word "deduction" as used the first time refers solely to remainder interests and, yet, "deduction" as used the second time refers to both remainder and income interests. Such a reading is illogical and unwarranted.

Plaintiff finds solace in the legislative history of the Acts at issue. We, however, find the legislative history presented to us by plaintiff to be unpersuasive. Our review of the relevant legislative materials fails to disclose a reliable indication that Congress intended to provide relief for charitable income interests prior to the 1978 Act. *See NLRB v. Plasterers' Union*, 404 U.S. 116, 129 n. 24, 92 S.Ct. 360, 368 n. 24, 30 L.Ed.2d 312 (1971); *Prairie Band of Pottawatomie Tribe of Indians v. United States*, 215 Ct.Cl. 1, 15, 564 F.2d 38, 46 (1977). To be sure, there are phrases intermingled in various materials which, standing alone, could be read as adding support to plaintiff's position that the legislation provided relief to charitable remainder trusts in their entirety.[12] For example:

> Proposed section 2055(e)(3) is a relief provision aimed at reducing the hardship caused by the 1969 enactment of the complex charitable remainder trust rules affecting certain charitable bequests and

transfers. Its fundamental premise is that an unqualified trust, if amended or conformed by the required date, * * * is treated for tax purposes as if the amended trust was actually in the will * * * as of the date of decedent's death.

*     *     *     *     *     *

Moreover, merely because section 2055(e)(3) does not apply to unqualified charitable income trusts no inference should be drawn that they may not be handled administratively. The reason for not including charitable lead trusts is primarily because we had no information as to whether charities were actually in the position of losing funds by reason of the failure of such trusts to comply with section 2055(e)(2), as was the case for charitable remainders. Should a strong need be shown, perhaps relief similar to this provision would be appropriate. [120 Cong.Rec. 35,460 (1974) (remarks of Rep. Burke). *But see* 120 Cong.Rec. 35,459 (1974) (remarks of Rep. Ullman).]

Further, it was hoped the relief provided by the 1974 legislation would be liberally construed. *See* 120 Cong.Rec. 28,117 (1974) (remarks of Sen. Hansen). Plaintiff places a strong emphasis on our use of a liberal construction of both the legislation and the legislative materials used in support of its position.

While the legislative history is far from clear, and therefore not dispositive, we are more impressed by the legislative history relied on by defendant. Defendant's legislative materials approach the issue with a specificity which is lacking in plaintiff's. This may be illustrated by S.Rep.No.93–1063, 93d Cong., 2d Sess., *reprinted in* 1974–2 C.B. 448. Both parties rely on portions of this report, but, after reading this background discussion beginning the report, we are convinced the Committee was con-

12. Plaintiff's strongest support comes from legislative materials in the 1978 Act explaining the prior Acts. *See* Joint Committee on Taxation, H.Rep.No.13511, 96th Cong., 1st Sess., General Explanation of the Revenue Act of 1978, 292 (Comm.Print 1979); S.Rep.No.96–498, 96th Cong., 2d Sess. 76, *reprinted in* [1980] U.S.Code Cong. & Ad.News 914, 983. Unfortunately, we

"have consistently stated that expression of opinion by a subsequent Congress on the meaning of an [A]ct adopted by an earlier Congress [has] little, if any, significance." *Hart v. United States*, 218 Ct.Cl. 212, 225, 585 F.2d 1025, 1032 (1978). Thus, we do not feel these legislative materials are sufficient to alter the literal language of the statute.

cerned with relief for remainder interests only:

> The Tax Reform Act of 1969 * * * imposed new requirements which must be satisfied by a charitable remainder trust for an estate tax deduction to be allowed for the transfer of a remainder interest to a charity. Under these new requirements, no estate tax deduction is allowable for a remainder interest in property passing at the time of a decedent's death in trust unless the trust is in the form of a charitable remainder annuity trust or unitrust. [Footnote omitted.][13]

Additionally, support for the defendant's position is found in the Conference Report to the 1976 Act, which discussed the Senate Amendment to the Act (which amendment was adopted by the Conference Committee):

> *Senate amendment.*—The Senate amendment extends the time for modification of wills and trusts which contain bequests of remainder interests to charity to qualify for an estate tax charitable deduction until December 31, 1977, and also allows wills and trusts created after September 21, 1974, and before December 31, 1977, to qualify for the extension. [S.Conf.Rep.No.94–1236, 94th Cong., 2d Sess., *reprinted in* 1976–3 C.B. (Vol. 3) 807,926.]

*See,* also, 120 Cong.Rec. 28,114 (remarks of Sen. Long).

■ Therefore, based on the plain language of the statute and our review of the legislative history of the Acts, we hold that no relief was provided for charitable income interests until the 1978 amendment to I.R.C. § 2055(e)(3). Even a liberal reading of plaintiff's supporting materials could not alter this holding.

**13.** The plaintiff relies on the following portion of the report:

"While the new requirements were provided so that the amount received [by the donee] would be consistent with the charitable deduction allowed to the donor on the creation of the trust, they have resulted during this transitional period in the prospect of many charities actually losing funds. Many charities today are beneficiaries of charitable remainder trusts created after October 9, 1969 which neither

C. Plaintiff's second argument is as follows: I.R.C. § 2055(e)(3) was amended in the Revenue Act of 1978 to specifically allow a deduction for a charitable income interest if the governing instrument is properly reformed; although this amendment was enacted after the June 30, 1978, cutoff date for filing a claim for refund provided in section 1304(b) of the 1976 Act, the 1978 amendment is fully retroactive in effect to decedents dying after December 31, 1969;[14] and the fact that plaintiff filed its refund claim to protect it from expiration before its right to a deduction became explicit is no bar to the allowance of such refund claim based on the extension provided in section 1304(b) of the 1976 Act.

Defendant counters by noting section 1304(b) of the 1976 Act, by its terms, is limited to the version of I.R.C. § 2055(e)(3) as of the 1976 amendment. This alleged limitation is based on the following phrase in section 1304(b): "A claim for refund or credit * * * allowable under section 2055(e)(3) * * * *(as amended by subsection (a))."* (Emphasis supplied.) *See* note 8, *supra.* As such, the defendant asserts, since the only claim for refund allowable under I.R.C. § 2055(e)(3) as of 1976 was a claim for a charitable remainder interest, no extension of the normal rules of I.R.C. § 6511(a) can be found in section 1304(b) of the 1976 Act for charitable income interests.

Plaintiff replies that the parenthetical phrase "as amended by subsection (a)" is merely a cross-referencing technique, not a freeze on the statutory relief provided.

Because we have already held I.R.C. § 2055(e)(3), as amended in 1976, did not qualify as a charitable remainder annuity trust or unitrust nor are covered by the exception indicated above. By failing to qualify, an estate tax deduction will not be allowed to the estate for the transfer of the remainder interest in trust. The result, the value of the trust remainder going to charity in these cases will be substantially decreased." [*Id.*]

**14.** By virtue of section 105(a)(4)(B) of the Technical Corrections Act of 1979.

grant relief to reformed charitable income interests,[15] the only way in which plaintiff may recover under its argument is a finding either that (1) section 1304(b) of the 1976 Act was not limited to the 1976 version of I.R.C. § 2055(e)(3), i. e., it applies to all subsequent amendments of I.R.C. § 2055(e)(3); or (2) the 1978 amendment of I.R.C. § 2055(e)(3), providing retroactive relief to charitable income interests, worked a modification on section 1304(b) of the 1976 Act.

■ Addressing first the question whether section 1304(b) of the 1976 Act was limited to the 1976 version of I.R.C. § 2055(e)(3), or whether it encompassed all revisions of that section, we agree with defendant and find it impossible to accept plaintiff's argument that the direct reference to the 1976 version of I.R.C. § 2055(e)(3) was merely inserted for purposes of cross reference. We feel bound to give that phrase its plain meaning. See Ocean Drilling & Exploration Co. v. United States, 220 Ct.Cl. ——, ——, 600 F.2d 1343, 1347–1348 (1979); Aparacor, Inc. v. United States, 215 Ct.Cl. 596, 600, 571 F.2d 552, 554 (1978). We also find other reasons for holding the phrase was not merely a cross-referencing technique.

First, limiting section 1304(b) to the 1976 version of I.R.C. § 2055(e)(3) provides a consistency which plaintiff's theory lacks. Section 1304(a) of the 1976 Act established December 31, 1977, as the deadline for beginning reformation proceedings of the governing instrument. Then section 1304(b) established June 30, 1978, as the deadline for filing claims for refund, giving a 6-month period after the filing of the petition for reformation to claim a refund. Thus under this interpretation, first the governing instrument is reformed and then the claim for refund of the previously unqualified interest is filed. Such a logical

procedure is not present in plaintiff's interpretation. In plaintiff's view, section 514(a) of the 1978 Act allowed a reformation of the governing instrument to begin as late as December 31, 1978, yet under section 1304(b) of the 1976 Act the claim for refund must be filed by June 30, 1978. Hence under plaintiff's theory, Congress established a procedure requiring a claim for refund to be filed even before filing the petition for the as yet only potential reformation of the governing instrument.[16] Moreover, the 1978 Act was not enacted until November 6, 1978, so, for a closed estate, relief would have to be applied for over 4 months before the authorizing law was even in existence.

Another reason we cannot accept plaintiff's view on this issue is that if the extension of the statute of limitations provided in section 1304(b) of the 1976 Act applies to the 1978 revision of I.R.C. § 2055(e)(3), then it logically must also apply to all other revisions of I.R.C. § 2055(e)(3), creating an even greater difference in time between the required filing of the claim for refund and then (maybe years later) the filing of the reformation petition. We decline to endorse an interpretation creating such an absurd result.

■ We turn now to the inquiry of whether the retroactive change provided in the 1978 amendment to I.R.C. § 2055(e)(3) in conjunction with the Technical Corrections Act of 1979 worked a modification on section 1304(b) of the 1976 Act, thereby extending by implication the statute of limitations to charitable income interests.

Every version of I.R.C. § 2055(e)(3) has provided that a timely claim for refund must be filed, specifically referring to I.R.C. § 6511. See page 5, supra. In 1976 Congress allowed an additional time period to file certain refund claims. By taking this

---

15. This holding also means we do not regard the 1978 amendment of I.R.C. § 2055(e)(3) as a retroactive clarification of the allegedly intended, albeit unwritten, relief contained in I.R.C. § 2055(e)(3) in either the 1974 or 1976 versions.

16. We also reject plaintiff's contention that there was a "protective filing" of the claim

under section 1304(b) of the 1976 Act. Because we held section 1304(b) of the 1976 Act is limited to the 1976 version of I.R.C. § 2055(e)(3) and the relief contained therein, any other interest must be claimed under the normal rules of I.R.C. § 6511, which, plaintiff admits, was not done.

action, Congress obviously recognized that I.R.C. § 2055(e)(3), standing alone, did not alter the normal limitation period. Plaintiff, however, contends that by making the 1978 version effective for the estates of decedents dying after December 31, 1969, it was meant to extend the time for filing a claim for refunds of charitable income interests.

We note first that neither the 1978 Act nor the 1979 Act referred to the extension of the statute of limitations provided by section 1304(b) of the 1976 Act. In light of our holdings above, an application of section 1304(b) to the 1978 and 1979 revisions must therefore be by implication.

Plaintiff argues that the 10-year retroactive application of the 1978 version of I.R.C. § 2055(e)(3) via the 1979 Act is meaningless if the statute of limitations was not also open to all such reformed income interests. We note, however, that the reformation would benefit those estates which remained open; and thus the relation back to December 31, 1969, is not without meaning. Also, we believe the legislative history accompanying the 1979 Act indicates the normal statute of limitations was not affected by that Act. S.Rep.No.96–498, 96th Cong., 2d Sess. at 76–77, *reprinted in* [1980] U.S.Code Cong. & Ad.News 914, 984, states:

> While the committee believes it appropriate to allow reformation of trusts to which the requirements of the Tax Reform Act of 1969 apply, *it does not believe that the period of limitations should be waived for this purpose.* [Emphasis supplied.]

Therefore, after reading the plain language of the 1978 version of I.R.C. § 2055(e)(3) and the relevant legislative history, we have not been persuaded that Congress intended anything but the normal rules of I.R.C. § 6511 to apply to interests reformed under that version of I.R.C. § 2055(e)(3). *Ocean Drilling & Exploration Co. v. United States, supra.* Interpreting the interrelationship between section 1304(b) of the 1976 Act and the 1978 and 1979 Acts as working a modification of the 1976 Act is improper here due to the lack of

the necessary indicias of support for such an interpretation. *Cf. United States v. Zacks,* 375 U.S. 59, 84 S.Ct. 178, 11 L.Ed.2d 128 (1963); *Kellogg-Citizens National Bank v. United States,* 165 Ct.Cl. 452, 330 F.2d 635 (1964). *See also Hampton v. United States,* 206 Ct.Cl. 422, 513 F.2d 1234, *cert. denied,* 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56 (1975).

## CONCLUSION

After consideration of all the arguments of the parties, for the reasons discussed above, we hold that count II of plaintiff's petition is barred by the statute of limitations, I.R.C. § 6511(a). We grant defendant's motion to dismiss; accordingly, count II of the petition is hereby dismissed.