**APARACOR, INC., formerly Queen's-Way to Fashion, Inc.**

v.

**The UNITED STATES.**

**No. 139–73.**

United States Court of Claims.

Feb. 22, 1978.

Warren C. Seieroe, Chicago, Ill., for plaintiff; Lawrence Gerber, Michael R. Fayhee, Judith S. Horn and McDermott, Will & Emery, Chicago, Ill., of counsel.

Asst. Atty. Gen. M. Carr Ferguson, Washington, D. C., for defendant; Robert S. Watkins, Washington, D. C., of counsel.

Before COWEN, Senior Judge, DAVIS, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges, en banc.

ON PLAINTIFF'S MOTION FOR COSTS INCLUDING ATTORNEYS' FEES

DAVIS, Judge.

We have heard this case *en banc* because it is the first to present the general issue of whether The Civil Rights Attorney's Fees

Awards Act of 1976, Pub.L.No. 94–559, 90 Stat. 2641, applies to tax refund suits in this court. The question is raised by the plaintiff's motion for the award of costs including attorneys' fees pursuant to 42 U.S.C. § 1988 (1970), *as amended by* The Civil Rights Attorney's Fees Awards Act of 1976, *supra*.[1] The costs were incurred in a withholding tax case before the court in which the issue was whether numerous individuals and groups or organizations of individuals engaged in selling the plaintiff's products at retail on a commission basis were independent contractors or employees of the plaintiff. The Internal Revenue Service had determined that taxes under the Federal Insurance Contributions Act and the Federal Unemployment Tax Act were owed by the plaintiff for the years 1968, 1969, and 1970 and had assessed the Federal Unemployment tax with interest for the year 1970. The plaintiff paid its Federal Unemployment tax for that year (with the assessed interest) and brought suit for a refund. A trial was held, and the plaintiff prevailed on the merits. *Aparacor, Inc. v. United States*, 556 F.2d 1004, 214 Ct.Cl. 130 (1977). It now seeks the award of court costs including attorneys' fees on the ground that the defendant acted in bad faith, that the position taken by the Government was so utterly contrary to case law, revenue rulings, and prior practice that "it is apparent that without regard to right or wrong, the IRS sought by administrative action to bludgeon plaintiff into doing its bidding or risk financial ruin."

█ Wholly aside from the claimed bad faith of the Government, we hold that The Civil Rights Attorney's Fees Award Act of 1976 does not authorize us to award attorneys' fees in this type of tax refund suit.[2] Both the language[3] and the legislative history compel this result. The statute states that "in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the . . . Internal Revenue Code, . . . the court, in its discre-

---

1. The plaintiff submitted the following bill of costs with its motion:

| | |
|---|---:|
| Filing fee | $ 10.00 |
| Printing petition and brief | 1,024.00 |
| Reporters and transcripts | 1,495.00 |
| Attorney fees | 164,548.00 |
| Reimbursement of attorney expenses | 6,212.00 |
| Total | $173,289.00 |

2. It is common ground that this court does not have the power to award attorneys' fees without specific authorization by act of Congress. 28 U.S.C. § 2412 (1970); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 266–68, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Yee v. United States*, 512 F.2d 1383, 1385 n.6, 206 Ct.Cl. 388, 394 n.6 (1975); *Middleton v. United States*, 175 Ct.Cl. 786, 795–96 (1966).

3. 42 U.S.C. § 1988 (1970), *as amended by* The Civil Rights Attorney's Fees Award Act of 1976, Pub.L.No. 94–559, 90 Stat. 2641, provides as follows:

Sec. 1988. Proceedings in vindication of civil rights.

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. [In any action or proceeding to enforce a provision of sections 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes, title IX of Public Law 92–318, *or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code,* or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.]

The portion in brackets was added to 42 U.S.C. § 1988 (1970) by Pub.L.No. 94–559, while the italicized portion was added to Pub.L.No. 94–559 during the Senate floor debate by an amendment of Senator Allen.

tion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The defendant says that the statute is not applicable here because the suit was initiated by the taxpayer, rather than brought "by or on behalf of the United States." That seems to be the meaning of the words on their face. The Act governs suits in which the Government is the initiator and actor, but in an ordinary refund action such as this the taxpayer, not the Government, is the initiator and the actor. The "civil action or proceeding" is not "by or on behalf of the United States of America" but rather "by or on behalf of" the taxpayer. This normal understanding of the bare language is not conclusive but it is entitled to prevail unless overcome by a persuasive showing from the purpose or history of the legislation. *Prairie Band of the Pottawatomie Tribe of Indians v. United States*, 564 F.2d 38, 46, 215 Ct.Cl. ——, —— (1977).

Far from being subverted by the legislative history of the Civil Rights Attorneys' Fees Award Act, the "plain meaning" of that Act (with respect to tax suits) is fully confirmed by its history and background. The Senate bill, S.2278, originally contained no references to actions or proceedings under the Internal Revenue Code. The House and Senate reports [4] connected with the civil rights attorneys' fees legislation likewise made no reference to tax suits, or to the language in issue, which was added to S. 2278 as an amendment by Senator Allen, who made the following comments on his amendment when it was called upon the Senate floor on September 29, 1976.[5]

What [the amendment] does is to add to the civil rights attorneys' fees provision a provision that *if the Internal Revenue Service or the U.S. Government brings a civil action against a taxpayer* to enforce any provision of the Internal Revenue Code, and the Government does not prevail against the taxpayer, then the court, in its discretion, just as in the other cases, would be entitled to award the taxpayer reasonable attorneys' fees. That is all it does, and I hope the amendment will be agreed to [emphasis added].

Senator Tunney also made clear the limited applicability of the amendment in his remarks after Senator Allen's introduction of the amendment: [6]

Mr. President, as initial sponsor of S.2278, I would like to make clear my understanding of the intent of this amendment, which I support.

Essentially, it would apply to a situation where a taxpayer is harrassed [*sic*] by the IRS. In such a case, *a court has discretion to award reasonable attorneys' fees to the defendant.* The standard to be applied is the one the courts have adopted with respect to prevailing defendants, as described in the Senate report.

The purpose of this amendment is not to discourage meritorious lawsuits by the IRS, but to discourage frivolous or harrassing [*sic*] lawsuits.

*The amendment would not apply to a situation where the Government is plaintiff on appeal since the Government did not bring the action in the first instance* [emphasis added].

After adoption of the amendment, but before passage of the bill by the Senate, Senator Kennedy explained the applicability of the amendment: [7]

As I understand the provisions of the Allen amendment, *a court would be au-*

---

4. S.Rep.No. 94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin. News, p. 5908, which accompanied S.2278, was concerned solely with attorneys' fees in connection with civil rights litigation, as was H.R. Rep.No. 94–1558, 94th Cong., 2d Sess. (1976), which accompanied H.R. 15460. The two bills, as reported out by the Senate and House of Representatives Judiciary Committees were identical, except that H.R. 15460 was also ap-

plicable to title IX of Pub.L.No. 92–318, not covered by the Senate bill.

5. 122 Cong.Rec. S17049 (daily ed. Sept. 29, 1976).

6. 122 Cong.Rec. S17050 (daily ed. Sept. 29, 1976).

7. 122 Cong.Rec. S17050–51 (daily ed. Sept. 29, 1976).

thorized to award attorneys' fees to a taxpayer *who is a defendant in a civil action brought by the U.S. Government to enforce the provisions of the Internal Revenue Code.* The usual standard applied in cases where fees are awarded to prevailing defendants would apply here as well—that is, *awards are appropriate where the action initiated by the plaintiff, the Government,* acted in a frivolous or vexatious manner or brought the suit for purposes of harassment. . . .

Since *the amendment is intended to apply solely to prevailing defendants in tax cases,* the courts would be guided by well-settled judicial standards in the exercise of their discretionary authority to make fee awards to defendants. These standards are discussed in the Senate report on S.2278. They are discussed with greater detail in the House report on its companion bill. In general, the taxpayer would have to show bad faith on the part of the Government to bringing suit against him in order for fees to be allowed.

The courts have articulated the policy reasons for utilizing a stricter test in awarding fees to prevailing defendants than to prevailing plaintiffs, and these apply equally in tax cases and in actions brought to enforce the civil rights laws. Awarding fees to prevailing defendants is intended to protect parties from being harassed by unjustifiable lawsuits. *It is not,* however, *intended* to deter plaintiffs from seeking to enforce the protections afforded by our civil rights laws, or in this instance *to deter the Government from instituting legitimate tax cases* by threatening it with the prospect of having to pay the defendant's counsel fees should it lose. Were Congress or the courts to provide otherwise, it would have a substantial chilling effect on the bringing of genuinely meritorious actions. I am sure that *none of us would want to*

*inhibit responsible lawsuits brought by the United States to enforce the tax laws of our country.*

It should be clear, then, that a provision authorizing fee awards in tax cases has a fundamentally different purpose from one authorizing awards in lawsuits brought by private citizens to enforce the protections of our civil rights laws. In enacting the basic civil rights attorneys [*sic*] fees awards bill, Congress clearly intends to facilitate and to encourage the bringing of actions to enforce the protections of the civil rights laws. *By authorizing awards of fees to prevailing defendants in cases brought under the Internal Revenue Code, however, Congress merely intends to protect citizens from becoming victims of frivolous [sic] or otherwise unwarranted lawsuits.* Enactment of this amendment should in no way be understood as implying that Congress intends to discourage the Government from initiating legitimate lawsuits under the tax laws [emphasis added].

After passage by the Senate of S.2278 with the Allen amendment, the House on October 1, 1976, then proceeded to consider the bill. Representative Drinan, who acted as sponsor of S.2278 in the House, was quite explicit in his view that the bill would not apply to a situation such as is before the court in the present case.[8]

The Allen amendment would allow the prevailing party to recover its counsel fees in any civil action brought by the United States to enforce the Internal Revenue Code. *It would not apply to actions instituted against the Government by the taxpayer.* Since S.2278 does not allow the U.S. Government to recover its fees under any circumstances, the effect of the Allen amendment is to permit prevailing defendants in such cases to recover their attorney fees if they satisfy the criteria generally applicable under the bill to prevailing defendants, which I will discuss later at greater length.

---

8. 122 Cong.Rec. H12159 (daily ed. Oct. 1, 1976).

Similar remarks to the effect that attorneys' fees would be allowed to prevailing defendants in tax cases brought by the United States were made by Representatives Kastenmeier and Seiberling before the House adopted S.2278 on October 1, 1976. 122 Cong.Rec. H12162, H12166 (daily ed. Oct. 1, 1976).

Briefly, under settled judicial standards, prevailing defendants would recover their attorney fees only if they could prove that the United States brought the action to harass them, or if the suit is frivolous and vexatious [emphasis added].

In reaching our decision, we are not unmindful of the remarks made by Senator Allen on the floor of the Senate on January 14, 1977:[9]

I inserted the word "proceeding" in my new amendment specifically to include administrative proceedings or audits so that fees and costs in connection with audits or other IRS agency proceedings could be awarded by a court on application of a prevailing taxpayer. I also included the term "proceeding" so that it would be clear that in any case involving a disputed tax, the court would be free to award attorney fees so long as the taxpayer prevailed and the court felt that a fee award was appropriate considering all factors in the case and notwithstanding the formalistic characterization of the taxpayer as plaintiff or defendant or as appellant and appellee.

Incredibly, Mr. President, some commentators have suggested that my amendment would only apply in cases in which the Internal Revenue Service brought an action to recover an alleged overpayment of a tax refund. I find that suggestion ludicrous. Certainly that could not have been in the mind of any Senator here when we adopted my proposal. No, Mr. President, that interpretation of my amendment would make our action meaningless and would require a highly formalistic—indeed, almost 18th century—reading of the words used. Mr. President, the idea is simple, and I believe it was reasonably clearly expressed.

The idea simply is that in any proceeding in which the Government asserts a taxpayer's liability for a tax and the taxpayer asserts that he is not liable for the tax and thereafter prevails, then a court may award fees to the taxpayer as the court sees fit. The form which the action takes is not of consequence. Since all tax disputes boil down to the Government asserting a liability and a taxpayer denying it, the formal position of the two parties is immaterial. The problem my amendment corrects does not relate to procedural formalities; it relates instead to the substantive imbalance in resources available to the Government and to a taxpayer when the two dispute an issue of tax liability. Thus, differing standards with respect to a plaintiff or a defendant, which a court might for policy reasons apply in litigated controversies in other areas of the law, have no proper application in tax disputes.

There is only one kind of tax dispute regardless of who is a named plaintiff or a named defendant, or who is an appellant or an appellee, or who is an auditor or an auditee. A tax dispute is inherently a taxpayer asserting that he is not liable for a tax and the Government insisting that he is. The reasons of public policy which would make proper a discretionary award of fees are thus present or not present in a given tax controversy regardless of the formal position of the parties.

■ We agree with the conclusions reached by several other courts that these statements, made three months after the passage of Pub.L.No. 94–559, are little more than an expression of Senator Allen's personal opinion and are of slight value in construing the intent and meaning of the statute. *In re Kline*, 429 F.Supp. 1025, 1026–27 (D.Md.1977); *Key Buick Co. v. Commissioner*, 68 T.C. 178, 183 (1977), *appeal pending; Lieb v. United States*, No. 75–81–C, slip op. at 2 (E.D.Okla. Sept. 29, 1977); *cf. United States v. Philadelphia National Bank*, 374 U.S. 321, 348–49, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963) (views of members of subsequent legislatures upon intent of prior legislatures in passing statute entitled to little weight); *Fogarty v. United States*, 340 U.S. 8, 13–14, 71 S.Ct. 5, 95 L.Ed. 10 (1950).

**9.** 123 Cong.Rec. S732 (daily ed. Jan. 14, 1977).

We do not feel that Senator Allen's belated remarks provide a compelling reason to go beyond the ordinary meaning of the language of the provision, or the position taken by the participants in the actual debate. *See Selman v. United States*, 498 F.2d 1354, 1356, 204 Ct.Cl. 675, 680 (1974); *Benton v. United States*, 488 F.2d 1017, 1020, 203 Ct.Cl. 263, 269 (1973). His views were not addressed to the attention of the members of Congress before they voted on the Act; indeed, statements directly to the contrary were made by Representative Drinan prior to the House vote on the Act.[10] The Senator's statement would indicate that the procedural posture of the parties is irrelevant; that interpretation would render meaningless the language "by or on behalf of the United States." It is a fundamental maxim that a statute should, if possible, be construed so as to give effect to all parts of the statute rather than render some of the language superfluous or nugatory. *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *Jamerson v. United States*, 401 F.2d 808, 810, 185 Ct.Cl. 471, 475 (1968); *Tabor v. Ulloa*, 323 F.2d 823, 824 (9th Cir. 1963); 2A C. Sands, Sutherland Statutory Construction § 46.06 (4th ed. 1973). Moreover, the discussions and comments by various members of both Houses of Congress on the Act in general and in the committee reports (which themselves do not discuss the Allen amendment) indicate that the question of whether a party was a plaintiff or defendant was a matter of considerable concern to members of Congress; substantial attention was paid to the fact that different standards were to apply in the awarding of fees to plaintiffs as opposed to defendants.[11] From the discussions on the floor it would appear that Senator Allen's amendment was considered in the same light as the rest of the Act.[12] There is no reason for believing that the other members of Congress regarded all tax suits as equivalent under the Allen amendment, given its wording.

In addition, Senator Allen's highly expansive definition of a "proceeding" as including tax audits certainly goes beyond anything that was contemplated in the discussions on the floors of Congress. The chief concern of Congress in enacting S.2278 was to restore to the courts the ability to award attorneys' fees to prevailing parties and to undo, in part, the effect of the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society, supra*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The language of Senator Allen's amendment merely tracks the same language "action or proceeding" that appeared in the original S.2278 before amendment, which was concerned solely with litigation in courts. Senator Allen's remarks in introducing his amendment were also addressed to the award of attorneys' fees by a court in cases where the IRS brought a civil action and did not prevail. Nothing was intimated at that time, to the other members of the Senate before passage of the bill, of a broader meaning for "proceeding" than an

---

10. *See* text accompanying note 8 *supra*.

11. The language of the Act nowhere adverts to differing standards for making awards to plaintiffs in contrast to defendants; however, the legislative history would indicate that Congress was looking to past judicial practice. 122 Cong.Rec. S17050–51 (daily ed. Sept. 29, 1976) (Senators Tunney and Kennedy); 122 Cong. Rec. H12159–66 (daily ed. Oct. 1, 1976) (Representatives Drinan, White, Kastenmeier, Railsback, and Seiberling); S.Rep.No. 94–1011, 94th Cong., 2d Sess. 4–5, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 5908, 5912; H.R.Rep.No. 94–1558, 94th Cong., 2d Sess. 6–7 (1976).

12. Senator Kennedy's remarks discussing the Allen amendment in connection with standards

for prevailing defendants as analyzed in the House and Senate reports demonstrate clearly the fact that the Allen amendment was contemplated in the context of the entire Act, as do Representative Drinan's remarks. *See* text accompanying notes 7 and 8 *supra*.

In this regard, it might be noted that Senator Allen's remark on January 14, 1977 that "the court need not determine that the Government has harassed the taxpayer nor need the court determine that the Government has in some way acted in bad faith" (123 Cong.Rec. S731 (daily ed. Jan. 14, 1977)) in order to award attorneys' fees is also considerably at variance with much of the discussion cited in note 11 *supra*.

actual suit before a court. *Key Buick Co., supra*, 68 T.C. at 184.

■ The plaintiff contends that the United States did in effect bring a suit against the taxpayer; that the agreement entered into by the parties that the determination on the question of liability for the 1970 Federal Unemployment tax would be binding on the parties in regard to the other employment taxes not before the court was tantamount to a counterclaim;[13] and that to this extent there was an action or proceeding "by or on behalf of" the United States. The answer to this, however, is that in fact there was no counterclaim. The parties had agreed not to present the issue of liability in regard to the remaining taxes to the court. The statute contemplates the award of attorneys' fees only in connection with litigation before a court. Since no counterclaim was in fact presented to this court, we need not and do not reach the question of whether attorneys' fees could be awarded to a plaintiff who prevails on a tax counterclaim when the Government asserts such a counterclaim before the court.[14] Likewise, we do not have to reach the question of the appropriate standards under which such fees should be awarded.

■ The plaintiff also seeks the award of costs as authorized under 28 U.S.C. § 1920 (1970). However, it is the customary practice of this court to deny costs to either party. *Rasmussen v. United States*, 543 F.2d 134, 142 n. 20, 211 Ct.Cl. 260 (1976). We therefore deny the plaintiff's motion for costs including attorneys' fees and expenses.

NICHOLS, Judge, concurring, also joins in the opinion of DAVIS, Judge.

Judge Davis' analysis is correct, and I join in it, but I would have gone further and squarely faced up to this fact: the Allen amendment, as construed by the court, accomplishes an insignificant result, unworthy of the attention devoted to it by the Congress in debate. This is because, when the Government asserts and the taxpayer denies a liability for a tax, the Internal Revenue laws are so framed that it is the taxpayer who must sue. The Government need not do so. If the taxpayer should wait for the Government to sue him, he would allow the assessment to become final, and his right to contest his liability would be gone forever.

This is an elementary fact of life to the tax lawyer, but it may have been unknown to the distinguished statesmen who adopted the amendment. I find this more probable than that they were legislating tongue in cheek. It may have been the first opposition with some members, the second with others. That the amendment was a hasty floor improvisation, not studied in committee, further supports the conclusion that its sponsors at least expected it to have more impact than it has.

It is a well-known maxim that in construing a statute courts may not say to Congress: "We see what you meant, but you have not used the right technical language to express your intent." To me the ultimate issue for us to decide is whether that maxim is for application in this case.

My answer is no. The Allen amendment is a statute enlarging the liability of the United States to pay money on court judg-

**13.** The parties had agreed that the determination of the court with respect to the 1970 Federal Unemployment taxes would be binding in regard to the remaining asserted liabilities, totalling $2,351,523.12. At oral argument, the plaintiff's attorney explained that the Government had not made a counterclaim because an assessment for that amount would have prevented the plaintiff from obtaining the loan financing it required in order to carry on its seasonal business.

**14.** In *Patzkowski v. United States*, No. C 75–2002 (N.D.Iowa, filed May 9, 1977), *appeal pending*, a taxpayer's refund suit, the court denied the prevailing plaintiff the award of attorneys' fees, though the Government had made a counterclaim. The court held the counterclaim to be an action within the meaning of The Civil Rights Attorney's Fees Awards Act of 1976, but found that there was no bad faith involved in the bringing of the counterclaim and that the award of attorneys' fees was therefore inappropriate.

ments, *i. e.*, waiving not only the *Alyeska* rule against attorneys' fees, but also the sovereign immunity of the United States. The entire history of the jurisdiction of this court establishes and illustrates that for a claim to be enforceable under any such statute, it must (a) come within the spirit and intent of the statute, and (b) within its literal language technically construed. In this instance, if we agree Congress intended more than it enacted, it is hard to say how much more; Mr. Allen's post-enactment statement only adds confusion as to that. Thus the claim for attorney's fees here may not even pass the first test, but in any case, it fails the second. Congress has the Internal Revenue laws constantly under its eye, and if it wants harassed taxpayers to recover their counsel fees and other court costs, it will, if it employs its usual deliberative process, know how to say so in a technically correct manner. For us to try to do it would be legislation beyond our jurisdiction to enact. The Allen amendment is more an expression of disgruntlement with the tactics of some revenue agents than it is an effective piece of legislation, and we need feel no qualms of conscience in giving it scant operative effect.