**LUTHERAN MUTUAL LIFE INSURANCE COMPANY**

v.

**The UNITED STATES.**

No. 172–74.

United States Court of Claims.

July 18, 1979.

Bruce B. Graves, Des Moines, Iowa, for plaintiff; Swift, Brown, Winick & Graves, Des Moines, Iowa, of counsel.

Herbert Grossman, Washington, D.C., with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant; Theodore D. Peyser, Jr., Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, and DAVIS and KASHIWA, Judges.

## ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

KASHIWA, Judge:

This action to recover federal income taxes paid by plaintiff for its taxable year 1958 comes before the court on cross motions for partial summary judgment. The issue presented involves the proper method of calculating a life insurance company's deduction for dividends to shareholders under I.R.C. § 811(b). Having considered the briefs and arguments offered by the parties, we hold for the Government.

Plaintiff is a mutual life insurance company incorporated and with its principal place of business in Iowa. The tax year at issue was the first year life insurance companies were taxed under the Life Insurance Company Income Tax Act of 1959, P.L. 86–69, 73 Stat. 112 (codified in scattered sections of 800, 26 U.S.C.).[1] I.R.C. § 811(b)[2] established the method to determine the amount a life insurance company could claim as a deduction for dividends to policyholders for any taxable year. In simplified form that section instructs the taxpayer to

---

1. The Act, passed in June 1959, applied retroactively to the taxable year 1958.

2. I.R.C. § 811(b) reads in pertinent part:
   (b) *Amount of Deduction.*—
   (1) *In general.*—Except as limited by section 809(f), the deduction for dividends to policyholders for any taxable year shall be an amount equal to the dividends to policyholders paid during the taxable year—
   (A) increased by the excess of (i) the amounts held at the end of the taxable year as reserves for dividends to policyholders (as defined in subsection (a)) payable during the year following the taxable year, over (ii) such amounts held at the end of the preceding taxable year, or
   (B) decreased by the excess of (i) such amounts held at the end of the preceding taxable year, over (ii) such amounts held at the end of the taxable year.
   For purposes of subparagraphs (A) and (B), there shall be included as amounts held at the end of any taxable year amounts set aside, before the 16th day of the third month of the year following such taxable year * * * for payment during the year following such taxable year.

calculate its deduction by: (1) determining the amount of dividends to policyholders actually paid during the taxable year and (2) adding (or subtracting) the difference between the reserve for dividends to policyholders payable in the year following the taxable year and the reserve for dividends to policyholders payable in the taxable year. Because of the nature of the second element of the dividend deduction computation,[3] the amount of the reserve for dividends to policyholders payable in 1958 (opening dividend reserve) was particularly important to plaintiff.[4]

As required by Iowa law, plaintiff filed its annual statement for the years 1957 and 1958 on the form prescribed by the National Association of Insurance Commissioners (NAIC). Page three of the annual statement is entitled "Liabilities, Surplus and Other Funds" and contains information on policyholder dividends. In its annual statement for 1957 plaintiff reported $55,000 as dividends due and unpaid from 1957 and $2,000,000 as the estimated amount of dividends payable in the following year.

In preparing its 1958 income tax return, however, plaintiff's calculation of its opening dividend reserve did not fully reflect the amounts stated in its 1957 NAIC annual statement. Plaintiff determined its opening dividend reserve to be $1,983,455. This calculation reflected the addition of: (i) $55,000, the amount reported in its 1957 annual statement as unpaid dividends for 1957, to (ii) $1,928,455, the amount of dividends *actually paid in 1958.*[5]

On audit the revenue agent determined plaintiff's proper opening dividend reserve to be $2,055,000. His calculation reflected the addition of: (i) $55,000, the amount reported in plaintiff's 1957 annual statement as unpaid dividends for 1957, to (ii) $2,000,000, the estimated amount of dividends reported in plaintiff's 1957 annual statement for payment in 1958. The Service assessed a deficiency based, in part, upon that adjustment.

■ The specific issue in this case is whether for purposes of I.R.C. § 811(b) the amount of the opening dividend reserve should have been calculated by reference to the amount of the reserves reported by plaintiff in its 1957 annual statement or by reference to the amount of dividends plaintiff actually paid to policyholders in 1958.

The Life Insurance Company Income Tax Act of 1959 originated in the House of Representatives as bill H.R. 4245. The bill as reported out by the House Ways and Means Committee and as passed by the House of Representatives did not contain any provision for special treatment of the opening dividend reserve.

H.R. 4245 was sent to the Senate and referred to the Senate Finance Committee. During the Committee hearings and debate on the bill, an amendment was offered which provided as follows:

(3) *1958 Reserve for Dividends to Policyholders.*—For purposes of paragraph

---

3. The second element of the computation reflects the difference between the dividend. reserve for the year following the taxable year and the dividend reserve for the taxable year. Since these reserve figures are only estimates based on anticipated dividends payable in the particular year, they usually either slightly understate or overstate the actual amount of dividends paid in that particular year. The slight overstatement or understatement of the reserve will, of course, cause a large or smaller deduction for dividends paid in a particular year. If the taxation scheme remains constant, however, the second element of the § 811(b) computation will produce a wash effect between taxable years; thus, eliminating any protaxpayer or progovernment benefit.

4. Prior to the enactment of the Life Insurance Company Tax Act of 1959, plaintiff had historically overstated its reserve for dividends to policyholders for reasons relating to state insurance law. If the amount of the opening dividend reserve is overstated, however, the dividend deduction for 1958 will be understated by the same amount. Since the opening dividend reserve figure is not used in the calculation of the dividend deduction for any other year, due to the change in the life insurance taxation scheme which occurred in 1958, this original error is never corrected.

5. Plaintiff now argues that the proper calculation of its opening dividend reserve results in the figure $1,929,455.08. Because we hold for the defendant, we need not discuss plaintiff's arguments in support of this calculation.

(1), the amounts held at the end of 1957 as reserves for dividends to policyholders payable in 1958 shall be the amounts actually paid as such dividends during 1958.

This amendment was passed by the Committee and the bill was reported out to the Senate.

During the Senate debate on the amended H.R. 4245, the Treasury Department issued a written comment on the amendment set forth above in response to a request from Senator Byrd, Chairman of the Senate Finance Committee. The letter was signed by David A. Lindsay, Assistant to the Secretary of the Treasury. The content of the letter as placed in the record by Senator Byrd is set forth in the margin.[6] While the proper interpretation of the letter is in dispute between the parties, it clearly sets out Treasury's position that the amendment be eliminated. The Senate subsequently voted to delete the amendment, and the legislation as passed by the Senate and signed by the President contained no provision for special treatment of the opening dividend reserve.

In arguing for the adoption of its position, plaintiff is faced with a formidable obstacle. There is nothing in the statutory language that supports its position. The statute is complete and unambiguous. A normal understanding of the language of the statute reveals no Congressional intent to give special treatment to the opening dividend reserve calculation. "This normal understanding of the bare language is not conclusive but it is entitled to prevail unless overcome by a persuasive showing from the purpose or history of the legislation." *Aparacor, Inc. v. United States*, 571 F.2d

552, 554, 215 Ct.Cl. 596, 600 (1978); *Prairie Band of the Pottawatomie Tribe of Indians v. United States*, 564 F.2d 38, 215 Ct.Cl. 1 (1977).

Plaintiff contends that the legislative history shows that the Senate deleted the amendment to H.R. 4245 believing and intending that the adjustments to the opening dividend reserve mandated by that amendment would be permitted administratively by the Treasury. Thus, plaintiff argues that when read in light of the legislative history, § 811 requires the Service to allow it to calculate its opening dividend reserve by reference to the amount of dividends paid to policyholders during 1958. In the alternative, plaintiff requests that we apply the doctrine of equitable estoppel to prevent the Government from asserting a position contrary to that contained in the Treasury's letter to the Senate. The Government answers these contentions by arguing that Treasury's letter only proposed to correct those errors in opening dividend reserve calculations which were "technical" in nature. It asserts that the Service's rejection of plaintiff's treatment of its opening dividend reserve on its 1958 income tax return was consistent with Treasury's statements to the Senate because plaintiff's overstatement of its dividend reserve in its 1957 annual statement was not due to such a "technical" error.

■ We believe that there is a more straightforward answer to plaintiff's contentions which does not require an interpretation of a letter which is subject to conflicting interpretations. Both of plaintiff's legal theories are based on legislative histo-

---

6. "This is in reference to your request for our opinion on a proposed amendment to H.R. 4245, the pending life insurance company income-tax bill, dealing with the special rule under section 811(a)(3) [sic], which provides a special rule for the 1958 reserve for dividends to policyholders.

"This special rule was originally included in H.R. 4245 for the relief of certain companies which had overstated their reserve for policyholder dividends at the end of 1957, due to technical errors, caused, in certain cases, for example, by the introduction of new data-processing equipment.

"It is further understood that the introduction of this special relief rule will work unintended hardship on certain other companies. Accordingly, it has been suggested that an amendment be adopted to take care of this situation by eliminating section 811(a)(3) [sic] thus leaving the adjustment for the error in the starting policy dividend reserve to administrative action.

"The Department would have no objection to such an amendment" [105 Cong.Rec. 8435 (1959).] [The reference was meant to be to section 811(b)(3).]

ry which is limited solely to the Senate. While plaintiff speaks repeatedly of the intent of Congress, it has at most offered evidence of the intent of the Senate. When the House of Representatives passed H.R. 4245 and sent it to the Senate, the bill had no provision for special treatment of the opening dividend reserve. The legislation signed by the President had no provision for special treatment of the opening dividend reserve. Plaintiff has offered no evidence to show that the House of Representatives was even aware of the amendment passed by the Senate Finance Committee, or the communication from the Treasury to the Senate. Under these circumstances we cannot find a *Congressional* intent to allow special treatment of the opening dividend reserve, especially in the face of an unambiguous statute which makes no mention of such treatment. *Hart v. United States*, 218 Ct.Cl. ——, 585 F.2d 1025 (1978).

Plaintiff's estoppel argument is similarly flawed. Even if we assume the Treasury's letter should be interpreted as a promise to administratively adjust all errors in an opening dividend reserve,[7] plaintiff has failed to show any promise which was communicated to or relied upon by the House of Representatives. Under the circumstances of this case, any assertion that the Congress relied on the alleged promise by the Treasury Department would be untenable.

We conclude that plaintiff's treatment of its opening dividend reserve in its 1958 income tax return was contrary to the language of I.R.C. § 811(b). Plaintiff has failed to show that Congress meant what it did not say.

Accordingly, defendant's motion for partial summary judgment is granted and plaintiff's cross motion for partial summary judgment is denied. The case is remanded to the Trial Division for appropriate action.

---

7. By considering plaintiff's argument, we do not intend to endorse the theory that the doctrine of equitable estoppel may properly be invoked in a legislative context. We need not, and do not, decide that question in this case.