per curiam:
Emanual Housing Development Fund Company, Inc. (Emanuel), UPACA Non-Profit Housing Development Fund Company, Inc. (UPACA), and Good Neighbor Housing Development Fund, Inc. (Good Neighbor) are the respective owners of properties designed to provide housing for low and moderate income families. The owners entered into contracts for the rehabilitation of the housing projects with a general contractor, Rowayton Associates, Ltd. (Ro-wayton). The work was financed by building loans made to the owners by banks, and the loans were evidenced by a note and mortgage in each case. The rehabilitation projects qualified for mortgage insurance under the National Housing Act, and the Department of Housing and Urban Development (hud) insured each of the mortgages.
Before the completion of construction, Rowayton abandoned work on all three projects, whereupon the sureties became obligated to pay certain sums necessary to reimburse the owners to the extent of the performance bonds. At this stage, the sureties urged the plaintiff, SOL-G Construction Corp. (sol-g) to complete the work and also requested the New York Office of hud to authorize the lenders to make mortgage increases to provide for additional funds for sol-g in addition to those which had been available to Rowayton under its construction contracts, hud entered into no contract with sol-g, which, although it undertook to complete the work, did not expressly assume Rowayton’s contract. Ultimately, the UPACA project was largely completed by sol-g, and the Emanuel project was about 95 *848 percent completed before sol-g stopped work. There is, however, a dispute about the extent to which the Good Neighbor project was completed when the work was abandoned by sol-g. Plaintiff suffered substantial losses on each of the three projects and brought these suits to recover the amount of the claimed losses from the United States.
I.
The case is before the court on the parties’ cross-motions for summary judgment, which raise two principal issues. The first of these is plaintiffs claim that it entered into an implied contract with the United States through hud’s Director of its New York Area Office, whereby hud agreed that it would insure additional increases in the mortgages to the extent necessary to enable the owners to finance the completion of the work undertaken by sol-g. The claim is supported by documentary evidence and by an affidavit of plaintiffs president to the effect that the Director of th New York Area Office of hud, in consonance with representatives of the mortgagees, the sureties, and the owners of the properties, requested sol-g to complete the projects and agreed that hud would insure any addition to the mortgages that could be shown to be necessary for the completion of the projects. The affidavit further states that after a number of insured increases and additions to the mortgages, the area director refused to approve other increases that were necessary for completion; that when this was done, the mortgagees refused to make further funds available, and plaintiff had to discontinue work.
Defendant defends first on the ground that plaintiffs claims involve a promise of unlimited guarantee by hud, which is prohibited by the mortgage ceilings for each project and the mortgage loan limitation for the units as set forth in 12 U.S.C. §1715 l(d)(3)(ii). Defendant further argues that the alleged promises are beyond the scope of the New York Area Director’s authority, because the hud Handbook 4435.1 (Oct. 11,1972) prohibits the Director from guaranteeing any increases in fha insurance and states that the three primary reasons for which such increases may be considered are:
*849 1. To correct substantial errors in the original processing;
2. Substantial changes in the approved plans and specifications that have resulted in significant better-ments to the project and enhance the security of the mortgage; and
3. Changes essential to health, safety and operation.
We agree with the Government that even if an implied contract existed, plaintiff could not recover anything in excess of the ceilings and loan limits provided by 12 U.S.C. § 1715 7(d)(3)(ii).
However, the affidavit of plaintiffs president states that plaintiff is not claiming that an unlimited guarantee was made and that "none of the projects was remotely near the [statutory] ceiling, and that each of the projects could have been (and was) completed within those ceilings.”
Also the facts show and it is acknowledged by defendant (Defendant’s moving brief at 4) that hud authorized the lenders to make interim mortgage increases to provide funds for sol-g beyond those that had been available to Rowayton. Clearly, these increases did not fall within the three categories listed in the Handbook as quoted above. Also the Handbook provides: "In some instances, however, circumstances will warrant approval for an increase in the mortgage amount.” Despite defendant’s reliance on the provision of the Handbook which prohibits the Director from guaranteeing any increases, plaintiff has attached to its cross-motion letters of April 4, 1972, and July 12, 1972, which appear to be guarantees by the Area Director of hud. The record before us, therefore, presents factual issues as to the applicability of the provisions of the Handbook, the nature and extent of the promises and agreements made by hud’s Area Director, and the scope of his authority. These factual issues cannot be resolved on summary judgment and prevent us from deciding that plaintiff cannot recover some amount less than the statutory mortgage limits.
*850 II.
The second principal issue arises on plaintiffs claim that there was a Fifth Amendment taking of the mechanics liens which plaintiff had on the three projects. Plaintiff asserts the taking resulted from the Government’s foreclosure of the mortages assigned to it by the mortgagees upon Rowayton’s default. Upon the undisputed facts, we find that there was no Fifth Amendment taking of plaintiffs liens and that the Government is entitled to summary judgment on this claim.
It is established that the mortgages executed by the owners of the housing projects to the banks who made the loans, were recorded long prior to the date of the filing of plaintiffs mechanics liens. When the owners of the projects defaulted on their mortgage payments, the banks exercised their legal right to require hud to pay off the mortgage insurance; this was done, and the mortgagees assigned the notes and mortgages to hud. Thereafter, hud foreclosed, put the projects up for sale, and used the proceeds to pay off encumbrances on the property in the order of priority. In two of the three foreclosure actions in the United States District Court, plaintiff was made a party, and the district court determined the hud’s mortgage liens entitled it to priority over plaintiffs liens. Also, under New York law, the date when the mortgage is recorded, rather than the date of its assignment, controls for the purposes of obtaining priority in time and right. See United States v. Lawrence Towers, Inc., 236 F. Supp. 208 (E.D. N.Y. 1964). It is clear that when the United States foreclosed its rights as assignee of the mortgages, it was acting in its proprietary capacity; that plaintiffs liens were lost by operation of law, and that the Government (acting in its sovereign capacity) did not take or extinguish plaintiffs liens. The legal rights which attached as a result of the Government’s action were the same as if a commercial financial organization had foreclosed the mortgages after they had been assigned to it. Plaintiffs loss is the kind of consequential injury which results from lawful Government action, and does not entitle it to compensation as a Fifth Amendment taking. See DSI Corp. v. United States, 228 Ct. Cl. 299, 655 F.2d 1072 (1981), *851 and Omnia Commercial Co. v. United States, 261 U.S. 502 (1923). Armstrong v. United States, 364 U.S. 40 (1959), and Hodgkins v. United States, 162 Ct. Cl. 40 (1963), which plaintiff relies on, are distinguishable on their facts and do not support plaintiffs position.
III.
In addition to its principal claims referred to above, plaintiff sues to recover interest, costs, reasonable attorney’s fees and other disbursements. It is well established that in the absence of specific statutory or contractual authority, interest, attorney’s fees, or other expenses of litigation cannot be recovered against the United States. United States v. Mescalero Apache Tribe, 207 Ct. Cl. 369, 518 F.2d 1309 (1975), cert. denied, 425 U.S. 911 (1976) and Aparacor, Inc. v. United States, 215 Ct. Cl. 596, 571 F.2d 552 (1978). Plaintiff has made no showing of any statutory or contractual authority for the allowance of such claims. Although the court may allow court costs in certain situations, we find no reason for departing from our usual rule against allowing either party court costs.
IV.
For the reasons stated, the defendant’s motion for summary judgment is granted and plaintiffs cross-motion for summary judgment is denied, with respect to plaintiffs claims for a Fifth Amendment taking, and for interest, costs, attorney’s fees and other expenses. With respect to plaintiffs claim which is based upon an implied contract, both motions for summary judgment are denied without prejudice, and the question is remanded to the Trial Division for trial or other disposition.