**Mary E. HOCK, Executrix**

v.

**The UNITED STATES.**

No. 243–78.

United States Claims Court.

Feb. 24, 1983.

John F. Rogers, Pittsfield, Mass., for plaintiff; Cain, Hibbard & Myers, Pittsfield, Mass., of counsel.

Zinora M. Mitchell, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

OPINION

SPECTOR, Judge:

Pursuant to an order of the United States Court of Appeals for the Federal Circuit, this court, on October 8, 1982, entered a final judgment in favor of the plaintiff herein based on a prior recommended decision of November 20, 1981.[1] That judgment in the amount of $139,936.35 was affirmed on appeal by the Court of Appeals for the Federal Circuit on November 16, 1982.[2]

Plaintiff has now filed an application for attorneys' fees and other expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Defendant's opposition frames the issues to be decided in this opinion. Under the Act—

> * * * a court shall award *to a prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a)[3] incurred by that party in any civil action * * * brought by or against the United States in any court having jurisdiction of that action, *unless* the court finds that the position of the United States was *substantially justified* * * *. [Emphasis supplied].

The application details attorneys' fees in the amount of $46,645.45; enumerated costs under 28 U.S.C. § 1920 of $1,348.16; non-§ 1920 expenses of $3,812.15; and expert witness fees of $932.00, for a total

---

1. The decision of November 20, 1981 had been issued pursuant to Rule 134(h) of the then U.S. Court of Claims. Effective October 1, 1982, the Federal Courts Improvement Act, Pub.L. 97–164, 96 Stat. 25 (1982), vested this court with the jurisdiction formerly exercised by the Court of Claims.

2. Unpublished.

3. These are the costs enumerated in 28 U.S.C. § 1920.

claim of $52,237.76. Defendant's opposition, an exercise in "overkill," argues as follows:

    I    This court does not have jurisdiction to entertain applications under the Equal Access to Justice Act.

    II    Defendant's position in the underlying case was "substantially justified."

    III    Assuming it was not, plaintiff is not entitled to fees and expenses incurred prior to the effective date of the Act, October 1, 1981.

    IV    Plaintiff has not sufficiently itemized the attorneys' fees.

    V    If the fees sought are contingent fees, the Act does not specify recovery of fees incurred pursuant to a contingent fee arrangement.

    VI    Only those costs enumerated in 28 U.S.C. § 1920 are recoverable, and costs should not be awarded in any event because it was not the practice of the predecessor U.S. Court of Claims to award costs.

For the reasons hereinafter explained, only issues II and VI require extended discussion.

### I. The Court's Jurisdiction Under the Equal Access to Justice Act

■ Defendant's argument attacking the jurisdiction of the court has been raised in prior cases and it has repeatedly been rejected.[4] The rationale for rejecting defendant's jurisdictional argument in those prior cases is highly persuasive and is adopted herein.

### II. Was Defendant's Position in the Underlying Litigation Substantially Justified?

■ The Act by mandating that " * * * a court *shall* award * * * " fees and other expenses, "*unless* [it] finds that the position

of the United States was *substantially justified* * * * " (emphasis supplied) places the burden on the defendant of proving that its prior litigating position was reasonable. This is confirmed by the Act's legislative history, as discussed in prior decisions of this court.[5]

### A. The Facts and Issues in the Underlying Litigation

Overwhelming evidence in the case demonstrated that plaintiff's decedent, from the end of his military service in 1945 until his death in 1975, suffered from chronic schizophrenia of a mixed type predominantly catatonic and paranoid. This was a conclusion consistently appearing in his military and V.A. medical records. He was rated 100 percent disabled by the V.A. as the result of his service-connected mental illness following examination by a large number of U.S. Army and V.A. appointed doctors. One of the latter who had an opportunity to regularly and personally examine the decedent over a period of 10 years, on behalf of the defendant, concluded that he was incompetent, and furthermore that he was incompetent to make any major decisions including those involving money.

On January 27, 1975, following the start of a dramatic physical and mental decline which led to his death later that year, decedent appeared at a bank and presented a note'which read:

Treasurer of the
  United States
$139,936.35
 Cash
$1000.—
(signed) Jos. LePage

The bank drew a treasurer's check for $139,936.35 payable to the Treasurer of the United States, which did not disclose the identity of the decedent, and which the decedent then enclosed with a handwritten

---

4. *See Greenberg v. United States,* 1 Cl.Ct. 406 (Cl.Ct.1983) (Kozinski, C.J.); *Bailey v. United States,* 1 Cl.Ct. 69 (Cl.Ct.1983) (Wood, J.), and cases cited therein.

5. *See Bailey,* note 4, *supra,* and *Change-All Souls Housing Corp. v. United States,* 1 Cl.Ct. 302 (Cl.Ct.1982) (Willi, J.).

anonymous note addressed to "J.C. Neely, Asst. Comptroller for finance, Bureau of Government finance operations, Treasury Dept., U.S. Dept. of Treasury, Washington, D.C." The anonymous note transmitting the anonymous check read as follows:

Dear Sir:

Enclosed please find check for $139,-936.35 for reversion to general funds of the United States (or proper accreditation)

This decision is final and irrevocable.

Anon

The defendant negotiated the check about 10 days after its receipt. When in late 1976, plaintiff as representative of the decedent's estate learned what had happened to that estate and sought its return, defendant's position was that the check was a gift, from a donor with sufficient mental capacity to make a valid gift, and that it had been made out of affection for the Government. Psychiatric experts at trial found it highly significant that at earlier stages of his mental illness, the decedent had also given away all or large portions of his money, and had returned pension checks and medals to the Government, and that when he did this once again during the stressful period prior to his death from amyotrophic lateral sclerosis (Lou Gehrig's disease), this was once again symptomatic of his mental illness.[6]

There was no evidence that decedent felt any gratitude to the Army and the V.A. On the contrary, the overwhelming evidence shows that he expressed constant anger, hostility and resentment toward the Army, the V.A., the Postal Service, and the Government in general, and that these agencies were the principal objects of his paranoid delusions. They were regarded by him as the source of imagined persecution.

On "the overwhelming evidence," it was concluded that decedent lacked the ability by reason of his mental illness to handle his property, to know and consider those who would have a natural claim on his bounty, to consider and plan what he was doing,

and to act on a reasonable basis in disposing of his property. It was further concluded that the disposition which he made was symptomatic of decedent's mental illness, and an effort to appease his principal delusional persecutor.

B. *Plaintiff's Argument in This Application for Legal Fees and Expenses Under the Equal Access to Justice Act*

In its Answer, defendant originally admitted the decedent's schizophrenia at the time of the transfer; then denied it in an Amended Answer based on the deposition of a V.A. psychiatrist who was then unaware of the decedent's records, and who testified at trial after examination of Army and V.A. records that the defendant was in fact schizophrenic. Defendant constantly sought to impeach its own records, including the diagnosis of 10 Army and V.A. doctors who found the decedent schizophrenic. Defendant argued there was nothing wrong with decedent's bizarre behavior, described by his landlady and evidenced by his actions.

On appeal, defendant argued there was no evidence to support the judgment, and berated the trial judge for his findings based on the record. Defendant needlessly prolonged the case at enormous expense to plaintiff. Defendant had plaintiff's entire case, consisting of depositions and 50 Government documents, for 3 years prior to trial and judgment, and flatly rejected without comment plaintiff's offer to compromise for $80,000 in July of 1980.

An itemized hourly bill of plaintiff's first attorney (who withdrew when appointed a judge) and of her current attorney, support a fee based on hourly charges which is $14,187.05 *in excess* of the contingent fee of $46,645.45 which plaintiff will be required to pay and which is claimed herein. The remaining expenses, including costs of putting on psychiatric testimony, bring the total claim to $52,237.76.

---

**6.** A dreadful disease which produces physical symptoms parroting those which the decedent had previously only imagined as somatic delusions.

**C. Defendant's Argument on the "Substantially Justified" Standard**

■ Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made.

A court should look closely at cases, for example, where there has been a judgment on the pleadings or where there is a directed verdict or where a prior suit on the same claim has been dismissed. Such cases clearly raise the possibility that the government was unreasonable in pursuing the litigation.[7]

In *Estate of Berg v. United States,*[8] the U.S. Court of Claims held that "attorneys fees may be awarded against the United States if the government's conduct in litigating the issue is reprehensible in some manner." The Government was substantially justified in defending this case and the Government's litigation position was not reprehensible.

The $139,936.35 transferred to the United States was in the possession of the United States. It was transferred to the United States by Mr. LePage under circumstances which clearly could be interpreted to have constituted a gift. No one forced Mr. LePage to make the transfer, he seemed to be in possession of his faculties when he made the transfer, and he even wrote a letter explaining what he was doing. On the surface, the transfer certainly looked like a gift. * * * Mental capacity is a difficult concept for anyone to grapple with.[9]

*Conclusion on the "Substantially Justified" Standard*

In the legislative history underlying the Equal Access to Justice Act,[10] it is stated that:

The standard, however, should not be read to raise a presumption that the Government's position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.

Thereafter in *Estate of Berg,*[11] the U.S. Court of Claims held that Government conduct could be regarded as not "substantially justified" or unreasonable, if that conduct was "reprehensible"[12] in some manner.

It is concluded that defendant has sustained its burden of proving that its conduct in litigating the issues in this case was not reprehensible, and that it was substantially justified. The reasonable basis for litigating the factual issues was that:

Mental capacity is a difficult concept for anyone to grapple with. It is very difficult even for psychiatrists, and they often don't agree on the mental capacity of a patient even when they are considering virtually identical evidence.[13]

The decedent had, moreover, managed to function outside of an institution and with only occasional attention from his sisters, brothers and other relatives.

The reasonable basis for litigating the legal issues is that it was necessary to determine the decedent's mental capacity to make a gift, and his intent to make a gift, at the time of transfer, under Connecticut law, and based on his medical history.

It is therefore concluded that plaintiff's application for legal fees must be and hereby is DENIED.

**III. Recovery of Fees Incurred Prior to the Effective Date of the Act**

**IV. Sufficiency of Detail in Fee Claim**

**V. Recovery of Contingent Fee Which is Less Than Itemized Hourly Fees**

These three issues raised by defendant are rendered moot by the decision on Issue II.

---

7. S.Rep. No. 96–253, at 6–7; H.R. No. 96–1418, at 11.

8. 231 Ct.Cl. ——, 687 F.2d 377, 383 (1982).

9. Defendant's brief, p. 11.

10. Note 7, *supra.*

11. Note 8, *supra.*

12. That is, "culpable, censurable, blamable." *Webster's New International Dictionary,* 2d Ed.

13. Defendant's brief, p. 11.

## VI. *Recovery of Costs*

Plaintiff's entitlement to costs is not governed by the "substantially justified" test. Defendant argues that costs should not be awarded because it was not the practice of the predecessor U.S. Court of Claims to award costs, and that in any event an award of costs should be limited to those enumerated in 28 U.S.C. § 1920.

It was in fact the customary practice in the predecessor Court of Claims to deny costs to either party,[14] and costs were not awarded when judgment was originally entered in this case. Rule 54(d) now mandates the award of costs "as of course to the prevailing party unless the court otherwise directs," the award of costs in any case in which the United States is a party is still deemed to be discretionary because of an overriding statute.[15]

Because section 1920 costs were not awarded when judgment was originally entered herein, under the practice then prevailing, it is concluded that it would be inappropriate to alter that discretionary ruling now. Plaintiff's application for taxation of the costs enumerated in 28 U.S.C. § 1920 is therefore also DENIED.

---

**14.** *Rawlins v. United States,* 231 Ct.Cl. ——, 686 F.2d 903, 914 (1982); *Aparacor v. United States,* 215 Ct.Cl. 596, 607, 571 F.2d 552, 558 (1978).

**15.** 25 U.S.C. § 2412 provides in subparagraph (a) that " * * * a judgment for costs, as enumerated in § 1920 of this title * * * *may* be awarded to the prevailing party in any civil action *brought by or against the United States* * * *."  (Emphasis supplied)